[No. B196272. Second Dist., Div. Seven. Oct. 15, 2007.]

CHRISTINE KASPARIAN, Plaintiff and Appellant, v.
AVALONBAY COMMUNITIES, INC., Defendant and Respondent.

## COUNSEL

Doumanian & Associates and Nancy P. Doumanian for Plaintiff and Appellant.

De Simone & Huxster and Gerry De Simone for Defendant and Respondent.

## OPINION

**JOHNSON, Acting P. J.**—Plaintiff Christine Kasparian appeals from the summary judgment entered in favor of defendant AvalonBay Communities, Inc. (Landlord), on the ground a recessed drain, as a matter of law, was both an open and obvious condition and a trivial defect, which negated any duty of care on the part of Landlord to the 80-year-old Kasparian who sustained severe injuries from a fall after she tripped.[1] We reverse the judgment.

Kasparian contends summary judgment was improper, because competing expert declarations were in direct conflict on certain material factual issues. She assigns the following as unresolved material issues of fact: (1) whether the drain design and configuration met industry standards and building code requirements; (2) whether its size and dimensions in view of the surrounding circumstances rendered the recessed drain hazardous; and

---

[1] An appeal lies from the judgment, not from an order granting a summary judgment motion. (Code Civ. Proc., § 437c, subd. (m)(1); *Saben, Earlix & Associates v. Fillet* (2005) 134 Cal.App.4th 1024, 1030 [36 Cal.Rptr.3d 610].) The notice of appeal recites Kasparian "appeals from the Judgment . . . entered on December 21, 2006." Although an "Order Granting Motion for Summary Judgment" was filed that date, judgment was not entered until September 18, 2007. We deem the appeal to be from the judgment. (See, e.g., *Aguilar v. Universal City Studios, Inc.* (1985) 174 Cal.App.3d 384, 387, fn. 1 [219 Cal.Rptr. 891] [appeal from order deemed appeal from subsequent judgment]; Cal. Rules of Court, rule 8.100(a)(2) [notice of appeal, which must be liberally construed, "sufficient if it identifies the particular judgment or order being appealed"].)

(3) whether Landlord breached its duty of safety in managing and maintaining the apartment complex common area by failing to comply with its own inspection protocol. She also contends summary judgment was improper, because Landlord's statement of undisputed facts failed to address each of the two causes of action in the complaint.

Based on our review of the record and applicable law, we conclude Landlord was not entitled to summary judgment. The trial court erred in finding, as a matter of law, the recessed drain was both an open and obvious condition and a trivial defect. Whether the recessed drain grate constituted a hazardous condition presents a material issue for the trier of fact to determine.[2]

We conclude where the trial court grants summary judgment on the ground, as a matter of law, the alleged defect was open and obvious based on its personal inspection of photographs, the reviewing court is not bound by the trial court's determinations. Rather, the reviewing court takes a fresh look at the photographs relied upon by the trial court and examines the photographs de novo. Summary judgment cannot be based on photographs where the reviewing court concludes either reasonable minds might differ regarding whether the photographs correctly depict the alleged defect and the surrounding environs or whether the photographs conclusively establish the defect was open and obvious. We find the photographs before the trial court in this case are not conclusive on this issue and thus triable issues remain, requiring a reversal of the summary judgment.

## FACTS AND PROCEEDING BELOW

*Undisputed Relevant Facts*

On October 24, 2004, 80-year-old Kasparian resided in No. 324, a ground floor apartment at the AvalonBay Apartments. About 1:30 p.m., Kasparian fell to the ground as she walked along the brick paver walkway from her apartment en route to a trash receptacle. She sustained a cervical fracture and broken teeth. When she fell, Kasparian was carrying a trash bag and a purse in her left hand and using her cane, which was in her right hand.[3] Kasparian always followed the same path from her apartment to reach the trash receptacle next to the elevator. As a cautious person, Kasparian looked where she was walking. Prior to the date of her fall, she had noticed the drains in the walkway and specifically the drain in question. She did not recall ever having a problem with that particular drain.

---

[2] This disposition obviates the need to address Kasparian's remaining claims of error.

[3] Kasparian had been walking with a cane for 20 years but "used it just for more or less distances," such as from her apartment to the garage.

*Pertinent Procedural Matters and Proceedings*

On October 6, 2005, Kasparian filed a complaint against Landlord pleading two causes of action, respectively, negligence and premises liability, based on the same factual allegations, namely, 80-year-old Kasparian was walking in the common walkway of the apartment complex where she resided when she sustained continuing, severe injuries after suddenly tripping and falling due to "the uneven nature of the bricks used to cover said walkway in a negligent fashion," which was a dangerous condition created by Landlord. Landlord filed an answer generally denying the allegations and asserting 11 affirmative defenses.

Landlord moved for summary judgment on the grounds the recessed drain was not an actionable defect, because: (1) "[t]he drain was installed 1/4 inch below the pavement in compliance with industry standards"; (2) "[t]he deviation of 1/4 inch on the pedestrian walkway constituted a trivial defect"; and (3) "[t]he contrast between the drain and the adjacent pavers and [Kasparian]'s admitted awareness of the drain make[] the condition open and obvious."[4]

In her opposition, Kasparian disputed the "trivial defect" defense was applicable, because the subject condition involved the design and placement of a recessed drain, not one involving "wear and tear over time." She argued triable issues of material fact existed regarding the size and dimensions of the recessed drain; whether its placement and installation were within industry standards; whether the recessed drain constituted a dangerous condition of property in view of the totality of the circumstances; and whether such condition was "open and obvious." Kasparian further argued even if this condition were "open and obvious," Landlord was under a duty to maintain the premises in a safe condition. She argued summary judgment also was improper, because Landlord's separate statement did not address each of the two causes of action.

Landlord filed a reply attacking as nonsensical Kasparian's claim the "trivial defect" defense did not apply. Landlord argued Kasparian raised facts and issues irrelevant to whether summary judgment should be granted. It argued summary judgment was not foreclosed by the omission of its settled statement to address both causes of action separately and offered to file an amended settled statement. Landlord further argued its description of the

---

[4] Landlord also moved alternatively for summary adjudication on the first cause of action (negligence); the second cause of action (premises liability); and on certain affirmative defenses, i.e., seventh (dangerous condition open and obvious and known to Kasparian); 10th (condition trivial as a matter of law); and 11th (Landlord not on notice due to trivial nature of alleged defect and other circumstances).

drain grate and Kasparian's were not substantially different and invited the trial court to view the photographs submitted by both "to make its own determination whether the drain . . . , within its surroundings, is a trivial defect, or a dangerous condition."

On November 17, 2006, following a hearing, the trial court granted Landlord's motion for summary judgment. The court made these findings: (1) "The drain was an open and obvious condition that [Kasparian] had seen before"; and (2) "The drain was a trivial defect because its depth was less than half an inch and the circumstances show that [Kasparian] tripped on the drain at approximately one-thirty p.m. on a sunny day with no rain[;] the area [was] well-lit[;] nothing obstructed plaintiff's view[;] and no debris or foreign material [was] on the ground."

During the hearing, the trial court concluded Landlord owed no duty to Kasparian, because the evidence showed the drain was an open and obvious condition, rather than a hidden danger. In this regard, the court noted Kasparian admitted in her deposition she had noticed this particular drain when traveling from her apartment to the trash receptacle before the date of her fall, and the court found "[a] useful visual of the drain is provided by [Landlord]'s expert, Carl Sheriff, who includes photographs of the drain in exhibit 2 to his declaration."

The trial court further concluded Landlord also did not owe Kasparian a duty, because the evidence demonstrated the drain was "a trivial defect." According to the declaration of Landlord's expert, the drain was imbedded in the walkway in the manner required by industry guidelines and the drain was imbedded one-eighth to one-fourth of an inch below the walkway. The court noted this depth was less than the three-quarter inch depth of the sidewalk crack found to be trivial in *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394 [237 Cal.Rptr. 413] (*Ursino*). As for the surrounding circumstances, the court noted Kasparian "admitted in her deposition that she fell at about one-thirty p.m., on a sunny day with no rain, that the area was well lit, that nothing obstructed her view of the drain, and that there was no debris or other foreign material on the ground."

Although noting the declaration of Kasparian's expert set forth a different drain depth, the trial court found such differing measurements did not create a factual issue as to the existence of a trivial defect. The court explained "[t]he greatest depth measured by [Kasparian]'s expert is five-sixteenths of an inch, which is only one-sixteenth of an inch more than the one-quarter of a[n] inch measured by [Landlord]'s expert."

The trial court found irrelevant Kasparian's argument Landlord owed her a duty to inspect for dangerous conditions and maintain inspection records,

because "the evidence shows . . . [Landlord] had no duty to discover, repair, or warn [her] about the drain [for the reason] it was open and obvious and trivial . . . ."

The court rejected as unpersuasive Kasparian's arguments about the impropriety of Landlord's separate statement and the inapplicability of the "trivial defect" defense.

On December 21, 2006, the trial court entered an order granting Landlord's summary judgment motion. The order contained these recitals: (1) "The reportedly dangerous condition . . . was both open and obvious and constituted a trivial defect. [Landlord] breached no duty to [Kasparian]. This determination is based upon the papers submitted by both parties in connection with the motion [and] upon the holding in Ursino . . ."; (2) Landlord's "inspection practices were irrelevant because there was no duty to warn as there was no defective condition; [Kasparian]'s purported distinction that this case does not involve a 'crack' is not supported by any citation to law"; and (3) "The condition at issue, as a matter of law and fact did not constitute a dangerous condition and the purported difference in measurements as asserted by the experts who presented declarations did not create or illustrate a 'defect' beyond a trivial defect."

## DISCUSSION

### I.  *STANDARD OF REVIEW*

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[5] The trial court's grant of summary judgment is subject to de novo review. We independently determine whether the parties have met their respective burdens and whether no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.[6]

A moving defendant may prevail by presenting evidence conclusively negating an element of the plaintiff's cause of action or, alternatively, the

---

[5] Code of Civil Procedure section 437c, subdivision (c).

[6] *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; *Galanty v. Paul Revere Life Ins. Co.* (2000) 23 Cal.4th 368, 374 [97 Cal.Rptr.2d 67, 1 P.3d 658].

defendant may present evidence to "show[] that one or more elements of the cause of action . . . cannot be established" by the plaintiff.[7]

In order to meet the initial burden, "the defendant must present evidence that would preclude a reasonable trier of fact from finding . . . it was more likely than not . . . the material fact was true [citation], or the defendant must establish . . . an element of the claim cannot be established, by presenting evidence . . . the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' [Citation.]"[8] Once this burden has been met, the burden shifts to the plaintiff to demonstrate through specific facts, not simply allegations in the pleadings, the existence of a triable material factual issue as to the cause of action.[9]

As a reviewing court, we consider the evidence presented in the light most favorable to the opposing party, liberally construing the opposing party's evidence and strictly scrutinizing the moving party's.[10] "We are not bound by the trial court's stated reasons or rationales. [Citation.]"[11] "Summary judgment is a drastic remedy to be used sparingly, and any doubts about the propriety of summary judgment must be resolved in favor of the opposing party. [Citations.]"[12]

## II. *COMPETING AND CONFLICTING EXPERT DECLARATIONS*

### A. *Supporting and Opposing Expert Declarations*

In his supporting declaration, Carl Sheriff, Landlord's "reconstruction and safety expert/consultant,"[13] opined "the subject paver-drain configuration does not pose an unreasonable risk of harm to someone exercising due care in traversing the subject walkway. It is further my professional opinion that the

---

[7] Code of Civil Procedure section 437c, subdivision (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493] *(Aguilar)*.

[8] *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].

[9] Code of Civil Procedure section 437c, subdivision (p)(2); *Aguilar, supra*, 25 Cal.4th at page 849.

[10] *O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 284 [30 Cal.Rptr.3d 507, 114 P.3d 753].

[11] *Mateel Environmental Justice Foundation v. Edmund A. Gray Co.* (2003) 115 Cal.App.4th 8, 17 [9 Cal.Rptr.3d 486].

[12] *Mateel Environmental Justice Foundation v. Edmund A. Gray Co., supra*, 115 Cal.App.4th at page 17.

[13] Sheriff set forth the particulars concerning his licensure, professional education, and experience as an expert and attached his "Curriculum Vitae" as an exhibit. He also stated he had inspected the site on two occasions and described the evidentiary matters upon which he relied.

imbedding of the drain in the subject concrete paver walkway is not a defect at all, but rather, is the preferred and proper method of installing a walkway drain."

Based on his personal inspection of the subject site, Sheriff concluded the drain in question was "of metal composition, flat on its upper surface, and 5 inches in diameter." The drain was "imbedded in an interlocking concrete brick/paver ('brick pavers') walkway at a depth of no more than 1/4"." He opined "the imbedding of the subject drain in the concrete paver walkway at no more than a 1/4" depth fully complies with all industry guidelines, and meets all industry standards for installation and safety." He stated "[t]he American Society for Testing & Materials (ASTM), as well as industry standards and product manufacturer(s) installation instructions specify . . . drains placed in concrete brick paver walkways, the exact type of walkway that is at issue in this case, are to be installed 1/8" to 1/4" below the surface of the surrounding concrete brick pavers."

Attached as exhibit 2 to his declaration were copies of photographs he had taken of the drain, including his measurement of the depression caused by the drain, and of the surrounding area.

Sheriff further stated he had "reviewed the inspection records of the Glendale Department of Building and Safety . . . [a]nd determined . . . the entire Avalon Glendale apartment complex was approved by GDBS for code compliance and safety prior to its opening for business."

Kasparian relied on declarations from two other experts to counter Sheriff's declaration. Kasparian's "floor safety expert and consultant," Kenneth D. Newsome, disagreed with Sheriff's opinion and conclusion " 'the subject paver-drain configuration does not pose an unreasonable risk of harm'. . . ."[14] Rather, it was Newsome's "professional opinion . . . the subject recessed drain, taken with the surrounding factors, presents a hazardous condition for someone who is used to being in a walkway where all of the other drain grates are flush to the surrounding surface of the pavers."[15]

---

[14] Newsome set forth the particulars concerning his licensure, professional education, and experience as an expert and attached his "Curriculum Vitae" as an exhibit. He also stated he had inspected the site on one occasion and described the evidentiary matters upon which he relied.

[15] Newsome also opined "the property owner should have in place a uniform system of inspections of the premises; a uniform system in place for recordation of complaints or defects in a given location on the premises; and a uniform system for preserving inspection records." He stated "[t]he evidence reviewed in this case confirms [Landlord] did not have a uniform system in place for recordation of complaints or defects observed; nor did [Landlord] have a uniform system in place for preserving inspection records."

Newsome stated "[t]he slope to the drain in the walk path is dramatically more severe than that found in customary drains. Moreover, there are no warnings or color distinctions to warn pedestrians of the fact that the drain is recessed. Ms. Kasparian would have a reasonable expectation of safety when walking through this area and the management should [have] recognized this hazardous anomaly."

Based on his personal inspection of the site, Newsome concluded "[t]he subject drain is of metal composition, flat on its upper surface, and measuring 5 inches in diameter" and the "drain cover is imbedded in an interlocking concrete brick/paver walkway. The hole created for the drain grate is uneven, with heights ranging from 1/32 inch to 5/16 inch. [He] used the Profile Imager to depict the condition. The size and profile of the depression created for the grate varies from one end to the other which poses a safety hazard to pedestrians who do not have any expectation . . . any drain is not flush with the surrounding brick pavers."

Newsome opined "[t]he existing profile would allow a foot to come to an abrupt stop against a vertical surface that exceeds the standard of care abrupt level change." He explained "[t]he abrupt change in level here amounts to a hazard per [*sic*] the California Uniform Building Code and the American with Disabilities Act in that it exceeds 1/4 inch." He stated "ASTEM F 1637, The Americans with Disabilities Act (4.5), and the California Uniform Building Code (1133B.2.4.1) identify any abrupt change in level that exceeds 1/4 inch [as] a hazard. This provision of the Building and Safety Code applies to the location of [Kasparian]'s accident as an apartment building is considered a public building and is covered by occupancy 'B' of the . . . Code."

He opined "[t]he surrounding circumstances of the location of the accident make the area very hazardous given that the drains from a distance appear similar in color to the bricks/pavers; the drains are not distinguishable by color and texture [from] the surrounding pavers; the drains in the area are not all flush with the adjacent brick pavers which surround the drains;[16] and in the totality of the circumstances cannot be easily detected even in daylight." He explained "[t]he survey of the other drains immediately near unit 301, on

---

[16] The word "not" appears to be an inadvertent misstatement. Its use conveys exactly the opposite of what was meant. When viewed in context, the statement Newsome clearly intended to make was the drains cannot be easily detected even in daylight, because the drains are all flush (rather than "not all flush") with the adjacent brick pavers which surround the drains. This conclusion is confirmed by Newsome's followup reference to the drains being flush with the brick/paver surface.

both sides of the drain in question, confirms . . . those drain covers are flush with the brick/paver surface, and the slope to the drain is nearly level unlike the drain in question."[17]

In his opposing declaration, Peter Panossian, a licensed general contractor who had constructed "various apartment complexes and condominium multi-family projects both in and outside of the City of Glendale," stated he was "familiar with the construction industry standards as well as the City of Glendale's Municipal Code requirements for construction and design of residential dwellings and walkways within such premises."[18] Panossian opined "the location where Ms. Kasparian fell was not in compliance with the [Glendale] City's Building Code or standard construction practices in that the drain was not flush with the surrounding brick pavers."

Panossian explained the code provisions "in effect at the time of [the] accident . . . applicable to the residential apartment complex where [the] accident occurred . . . , as well as construction industry standards, require . . . any brick pavers installed on a walkway must be flush with any drains placed within the brick pavers." He opined "[t]he slightest change in elevation will cause tripping and slipping hazards to users of such premises."

He stated "all other drains in the immediate vicinity of the drain involved in Ms. Kasparian's accident are flush with the ground [unlike the drain on which her foot became caught]" and opined this fact "creates a hazard for users of the walkway who have an expectation that all the drains in the walkways will be flush with the surrounding brick pavers."

Panossian further opined "the location where Ms. Kasparian fell was not in compliance with the City's Building Code or standard construction practices in that changes in elevation between the drain and the brick pavers should have been made beneath the brick pavers and not between the pavers and the drains." He explained the code and "construction industry standards . . . require . . . in the event the area around a drain is to be sloped for drainage purposes, the grading must occur beneath the surface of the brick pavers and not between the brick pavers and the surface drains. It is [his] understanding that while the area beneath the brick pavers in question was compacted sand,

---

[17] The record does not contain exhibit "B" to Newsome's declaration, which was comprised of copies of photographs Newsome had taken of the subject drain, including measurement of the depression caused by the drain, and of the surrounding area "as well as a slope profile as depicted by the Profile Imager."

[18] Panossian described his licensure, education, and experience in his field. He listed the evidentiary matters he relied upon and specifically stated he was "familiar with the Glendale Municipal Codes which apply to building and construction generally . . . which were in effect at the time of Ms. Kasparian's accident and which would have been applicable to the residential apartment complex where [her] accident occurred."

the grading which occurred was to the surface area as opposed to the subterranean portion which is required by the Building Code."[19]

## B. *Waiver if No Ruling on Evidentiary Objections*

Objections were filed to certain evidence relied on by Kasparian in opposition to the summary judgment motion. Landlord objected to the entirety of Panossian's declaration "on the grounds it lacks foundation; it is hearsay, it deals with an improper subject of expert opinion; and it is speculative, specifically in reference to the purported applicability of the Glendale Municipal code (none of whose provisions are cited)." As authority, Landlord cited *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922 [19 Cal.Rptr.3d 254] (*Caloroso*) and *Ursino, supra*, 192 Cal.App.3d 394.

Relying on this case authority, Landlord also objected to the entirety of Newsome's declaration. It objected specifically to paragraphs 9 through 12 of the declaration on the grounds "the declaration lacks foundation[; it] is hearsay[; it] is the improper subject of expert opinion[;] and [it] is speculative, particularly with reference to the Americans with Disability Act, the California Uniform Building Code, ASTMF 1637, and any opinion . . . the drain grate in this case, with surrounding circumstances, constitutes a dangerous condition."

The trial court never ruled on these objections. Accordingly, whether these objections are meritorious is a matter not before us, and none of the matters objected to by Landlord is excluded. "[W]here counsel fails to obtain rulings on evidentiary objections to opposition evidence in summary judgment proceedings, the objections are waived and are not preserved for appeal. [Citation.]"[20]

## III. *WHETHER RECESSED DRAIN WAS OPEN AND OBVIOUS REMAINS A DISPOSED ISSUE*

The record does not support the trial court's finding the recessed drain condition was, as a matter of law, open and obvious. In making this finding, the trial court relied on copies of photographs taken by Sheriff, Landlord's expert, and attached as exhibit 2 to his declaration.

---

[19] Panossian also opined "[i]t is common for brick pavers to become loose, dislodged or wobbly with the passage of time. An appropriate method of routine and frequent inspections of the pavers is necessary so as to ensure that the pavers do not pose any hazards to pedestrians after they are first installed."

[20] *Madden v. Del Taco, Inc.* (2007) 150 Cal.App.4th 294, 301 [58 Cal.Rptr.3d 313], citing *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, footnote 1 [25 Cal.Rptr.2d 137, 863 P.2d 207]; cf. *Caloroso, supra*, 122 Cal.App.4th 922, 926 (lack of foundation, speculation, and improper subjects for expert opinion objections sustained).

Whether a trial court's findings based on its inspection of photographs of the alleged defective condition are conclusive has been addressed in several published cases. In *Ursino*, the plaintiff suffered a fractured hip, among other injuries, when she allegedly tripped over the raised edge of one section of the defendant's walkway. In conjunction with a defense summary judgment motion, the parties stipulated to various facts, including "the edge of the cement section in question was raised no higher than three-fourths of an inch" and "the 32 photographs presented to the trial court accurately depicted the sidewalk in question on the day of the accident."[21] In granting summary judgment, the trial court concluded in view of the stipulated facts, "reasonable minds could not differ as to the triviality of the defect."[22] The appellate court stated it had "reviewed the pictures of the sidewalk and agree[d] with the trial court that reasonable minds could not differ and that the defect was in fact trivial."[23]

Similarly, in *Caloroso*, the appellate court affirmed a summary judgment based on its own review of the photographs relied upon by the trial court. In that case, the plaintiff Josephine Caloroso allegedly tripped over a crack in the walkway in front of the defendant's home, which walkway allegedly consisted of "individual concrete slabs" that were "cracked, jagged, and depressed."[24] "It was undisputed that the difference in elevation created by the crack in [the defendant]'s walkway was less than half an inch at the highest point."[25] The reviewing court concluded: "Here, the trial court did not abuse its discretion in finding that, in this case, no expert was needed to decide whether the size or irregular shape of the crack rendered it dangerous. The photographs of the crack submitted by both sides demonstrate that the crack is minor and any irregularity in shape is minimal."[26]

■ We also conclude appellate review of the photographs relied upon by the trial court is subject to a de novo standard and therefore hold: Where the trial court grants summary judgment on the ground, as a matter of law, the alleged defect was open and obvious based on its inspection of photographs, the trial court's determinations are not binding on the reviewing court. It is incumbent on the reviewing court to examine the photographs for itself and make its own determinations.

■ We further conclude in examining photographs, the court, whether the trial or reviewing court, should take into account such factors as: (1) the

---

[21] *Ursino, supra*, 192 Cal.App.3d at page 396.

[22] *Ursino, supra*, 192 Cal.App.3d at page 397.

[23] *Ursino, supra*, 192 Cal.App.3d at page 397.

[24] *Caloroso, supra*, 122 Cal.App.4th at page 925.

[25] *Caloroso, supra*, 122 Cal.App.4th at page 927, footnote omitted.

[26] *Caloroso, supra*, 122 Cal.App.4th at page 928.

photograph's subject (i.e., its focal point); (2) the view of the subject (e.g., closeup, distant, isolated, in context); (3) the photograph's perspective (e.g., eye-level, overhead, ground-level); (4) the use of any plain-view altering devices (e.g., camera color filter, fisheye lens, computer manipulation); (5) the characteristics of the photograph (e.g., sharp and clear, blurry, grainy, color or black and white); (6) whether the photograph was taken under identical or substantially similar conditions (e.g., timing, lighting, weather); and (7) any other relevant circumstances (e.g., addition of extrinsic aids, such as a ruler or pointer).

As a reviewing court, we thus are obligated to examine anew the photographs relied upon by the trial court mindful of the above factors and reach our own independent conclusions, which we now do.

The trial court's finding of the open and obvious recessed nature of the drain is contrary to, and cannot be harmonized with, our examination of the same photographic evidence. Thus, contrary to the appellate court's review of the photographic evidence the trial courts found conclusive in *Ursino* and *Caloroso*,[27] our review of the photographs here leads to a contrary result. Based on the photographic evidence before the trial judge in this case, we find reasonable minds *could* differ as to whether this defect was trivial or open and obvious. Consequently, a triable issue remains and summary judgment cannot be predicated on the photographs on which the trial court relied.

In his declaration, Sheriff stated he personally took the photographs in exhibit 2, which depict "the subject drain that [Kasparian] identified in her deposition as being the drain that was the site and cause of her fall; the area immediately surrounding the subject drain"; and "the measurements [he] took of the depression caused by the subject drain."

Exhibit 2 consists of black-and-white copies of five photographs. The first appears to be an overview of a walkway or path between two curving, walled, and raised planter areas. No drain in the walkway is visible. The second is a photograph of the round drain in the walkway taken from the perspective of someone a short distance away from the drain. The drain and the surrounding portion of the walkway are in the shadow of what appears to be some sort of dense foliage. The outlines of the drain appear blurred, and no depression or defect can be ascertained. The third photograph was taken at

---

[27] Cf. *Caloroso, supra*, 122 Cal.App.4th 922, 928 (whether size or irregular shape of crack rendered it dangerous not subject to expert testimony where photographs of crack submitted by both sides demonstrated crack minor and any irregularity in shape minimal); *Ursino, supra*, 192 Cal.App.3d 394, 397 (appellate court "reviewed the pictures of the sidewalk and agree[d] with the trial court . . . reasonable minds could not differ and . . . the defect was in fact trivial").

ground level and depicts a ruler stuck vertically into the drain. From this angle and perspective, the viewer is able to observe the drain surface appears recessed in an uneven, jagged manner. The fourth photograph is an overhead shot of the drain as set into the walkway. From this perspective, the drain appears level with the walkway. The fifth photograph is similar to the first in that it depicts an overview of the walkway between two curving, walled, and raised planter areas. The drain also is not visible in this photograph.[28]

Additionally, these photographic depictions, especially of the drain, are of poor quality and fail to reveal the recessed nature of the drain, except for the photograph taken at ground level in which a ruler was stuck into the recessed area of the drain. These pictures thus have no evidentiary value on the issue of whether the recessed character of the drain was open and obvious from a pedestrian's point of view.

■ Summary judgment cannot be based on photographs where the reviewing court concludes either reasonable minds might differ as to whether the photographs correctly depict the alleged defect and the surrounding circumstances or when the photographs lack any probative value on the issue of whether the defect was open and obvious. The trial court therefore erred to the extent it granted summary judgment based on its finding the subject photographs revealed, as a matter of law, the recessed nature of the drain was open and obvious.

The trial court also found Kasparian knew of the recessed drain, because her deposition testimony revealed she had seen the drain prior to the date of her fall. The fact Kasparian had observed this particular drain previously is itself of little evidentiary value. Kasparian also testified she did not recall ever having stepped on that drain in the past. Kasparian did not testify she was aware the drain was recessed. The trial court's reliance on Kasparian's deposition testimony thus is misplaced and provides no support for its finding, as a matter of law, the recessed nature of the drain was open and obvious.

## IV. TRIVIAL DEFECT DOCTRINE DOES NOT WARRANT SUMMARY JUDGMENT

### A. Trivial Defect Doctrine

■ "In summary, persons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition.

---

[28] We note a small irregular pale splotch on the walkway near the left planter area but are unable to discern its nature, e.g., a defect in the photograph itself or some unknown object.

The duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects."[29] Although sometimes referred to as the trivial defect defense, the trivial defect doctrine is "not an affirmative defense but rather an aspect of duty . . . plaintiff must plead and prove."[30]

The trivial defect doctrine originated to shield public entities from liability where conditions on public property create a risk "of such a minor, trivial or insignificant nature in view of the surrounding circumstances . . . no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."[31] This doctrine "permits a court to determine 'triviality' as a matter of law rather than always submitting the issue to a jury [and] provides a check valve for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property."[32] The trivial defect doctrine has been expanded to embrace actions against private landowners.[33]

## B. *Trivial Defect Doctrine Factors*

"[W]hen a court determines whether a given defect is trivial, as a matter of law, the court should not rely merely upon the size of the depression. While size may be one of the most relevant factors to the decision, it is not always the sole criterion. Instead, the court should determine whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract depth would indicate. As such, the court should view the intrinsic nature and quality of the defect to see if, for example, it consists of the mere nonalignment of two horizontal slabs or whether it consists of a jagged and deep hole. The court should also look at other factors such as whether the accident occurred at night in an unlighted area. Furthermore, the court should see if there is any evidence that other persons have been injured on this same defect."[34]

---

[29] *Ursino, supra*, 192 Cal.App.3d at page 398.

[30] *Caloroso, supra*, 122 Cal.App.4th at page 927.

[31] Government Code section 830.2.

[32] *Ursino, supra*, 192 Cal.App.3d 394, 399.

[33] See, e.g., *Caloroso, supra*, 122 Cal.App.4th at page 927; *Ursino, supra*, 192 Cal.App.3d at page 398.

[34] *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734 [139 Cal.Rptr. 876] (*Fielder*); accord, *Caloroso, supra*, 122 Cal.App.4th at page 927; *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 267 [241 Cal.Rptr. 706] (*Dolquist*); *Ursino, supra*, 192 Cal.App.3d at page 397.

If the "court determines . . . sufficient evidence has been presented so that reasonable minds may differ as to whether the defect is dangerous, the court may not rule . . . the defect is not dangerous as a matter of law."[35] Conversely, where "the only evidence available on the issue of dangerousness does not lead to the conclusion . . . reasonable minds may differ, then it is proper for the court to find . . . the defect was trivial as a matter of law."[36]

Moreover, " '[a]s to what constitutes a dangerous or defective condition no hard-and-fast rule can be laid down, but each case must depend upon its own facts.' [Citation.]"[37]

### C. *Trivial Defect Doctrine Does Not Warrant Summary Judgment*

The trial court alternatively granted summary judgment in favor of Landlord based on the trivial defect doctrine. This was error. Contrary to the court's conclusion, material factual issues remain regarding whether the recessed nature of the drain when viewed in the context of the surrounding circumstances gave rise to a hazardous condition.

In finding the trivial defect doctrine controlled, the trial court focused solely on the depth of the recession and on Kasparian's deposition testimony about nothing obstructing her view of the drain; the absence of debris or other foreign material on the ground; and the lighting conditions, namely, she fell on a sunny afternoon in a well-lit area. This focus was too narrow.[38]

According to Kasparian's expert Newsome, "[t]he hole created for the drain grate is uneven, with heights ranging from 1/32 inch to 5/16 inch."[39] He opined "[t]he size and profile of the depression created for the grate varies

---

[35] *Fielder, supra*, 71 Cal.App.3d at page 734.

[36] *Fielder, supra*, 71 Cal.App.3d at page 734.

[37] *Dolquist, supra*, 196 Cal.App.3d 261, 268, quoting *Fackrell v. City of San Diego* (1945) 26 Cal.2d 196, 206 [157 P.2d 625].

[38] In *Dolquist, supra*, 196 Cal.App.3d 261, this court found unpersuasive the "argument that since the protrusion of the rebar (steel reinforcement) that caused appellant's fall was a quarter of an inch above the concrete surface, it only constituted a 'trivial defect.' " (*Id.* at p. 268.) We explained "application of a strict tape measure approach to determine whether a defect is trivial as a matter of law, disregards the fact that other factors and circumstances involved in a particular case could very well result in an entirely different conclusion from one arrived at by simply measuring the size of a defect." (*Ibid.*) We also noted the occurrence of the accident "in broad daylight" is not material where "there is [a] conflict as to whether appellant saw the rod as she crossed over the abutment . . . or whether if she did see it, it looked flush to her . . . ." (*Id.* at p. 269.)

[39] See *Caloroso, supra*, 122 Cal.App.4th at page 927 ("Aside from the size of the defect, the court should consider whether the walkway had any . . . jagged edges").

from one end to the other which poses a safety hazard to pedestrians who do not have any expectation that any drain is not flush with the surrounding brick pavers."

Newsome stated "[t]he survey of the other drains immediately near unit 301, on both sides of the drain in question, confirms . . . those drain covers are flush with the brick/paver surface, and the slope to the drain is nearly level unlike the drain in question." He added "[t]he slope to the drain . . . is dramatically more severe than that found in customary drains. Moreover, there are no warnings or color distinctions to warn pedestrians of the fact that the drain is recessed." He opined "[t]he surrounding circumstances of the location of the accident make the area very hazardous given . . . the drains from a distance appear similar in color to the bricks/pavers"; "the drains are not distinguishable by color and texture [from] the surrounding pavers"; and "in the totality of the circumstances [they] cannot be easily detected even in daylight."

Similarly, Panossian, Kasparian's other expert, stated in his declaration "all other drains in the immediate vicinity of the drain involved in Ms. Kasparian's accident are flush with the ground [unlike the drain on which her foot became caught]" and opined this fact "creates a hazard for users of the walkway who have an expectation . . . all the drains in the walkways will be flush with the surrounding brick pavers."

The trial court noted Sheriff, Landlord's expert, opined the drain was embedded in the walkway in the manner required by industry guidelines. Inexplicably, the court failed to take into account the contrary opinions of Newsome and Panossian in their opposing expert declarations.

Sheriff stated "[t]he American Society for Testing & Materials (ASTM), as well as industry standards and product manufacturer(s) installation instructions specify . . . drains placed in concrete brick paver walkways, the exact type of walkway that is at issue in this case, are to be installed 1/8″ to 1/4″ below the surface of the surrounding concrete brick pavers."

In stark contrast, Newsome opined "[t]he abrupt change in level here amounts to a hazard per [sic] the California Uniform Building Code and the American with Disabilities Act in that it exceeds 1/4 inch." Panossian opined "the location where Ms. Kasparian fell was not in compliance with the City's Building Code or standard construction practices in that the drain was not flush with the surrounding brick pavers." He also opined "the location where [she] fell was not in compliance with the City's Building Code or standard construction practices in that changes in elevation between the drain and the brick pavers should have been made beneath the brick pavers and not between the pavers and the drains."

In view of the competing, conflicting evidence presented by these experts, the trial court was foreclosed from relying on the trivial defect doctrine to grant summary judgment in favor of Landlord.

## DISPOSITION

The judgment is reversed with directions to vacate the order granting summary judgment and enter a new order denying summary judgment. Kasparian is awarded costs on appeal.

Woods, J., and Zelon, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 16, 2008, S158416.