Filed 7/20/15  Boyd v. State of California CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHELLE BOYD,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>STATE OF CALIFORNIA,<br><br>        Defendant and Respondent. | A138612<br><br>(Contra Costa County<br>Super. Ct. No. MSC1003570) |

In this action, plaintiff Michelle Boyd alleges she was injured when she fell on a sidewalk on State Route 4 in the City of Oakley.  She brought this action against defendant State of California (Caltrans), alleging a cause of action for dangerous condition of public property.  Caltrans moved for summary judgment on the ground the alleged dangerous condition was trivial as a matter of law; the trial court granted the motion and denied plaintiff's motion for reconsideration.  We shall affirm the judgment.

## I.  BACKGROUND

### A.  Caltrans's Motion for Summary Judgment

Plaintiff alleged she fell on a sidewalk that had a two-inch deviation in height.  In support of its motion for summary judgment, Caltrans submitted evidence that plaintiff testified the incident occurred when she lost her balance after either tripping or stepping into a depression along a seam where a concrete sidewalk ended and an asphalt sidewalk began.  There was a transition from a lighter to a darker color on the pavement surface at that point.  The incident occurred on a dry, sunny morning.  During her deposition, plaintiff indicated on a photograph the portion of the sidewalk where she tripped and fell;

1

the area she indicated encompassed approximately half the width of the sidewalk, on the portion closest to the curb. Plaintiff never took any measurements at the scene of the incident.

Caltrans also submitted the declaration of David Despain, the Caltrans maintenance supervisor responsible for sidewalks on State Route 4 in the City of Oakley, including the scene of the incident. He stated that he knew of any complaints made regarding conditions along State Route 4 in Oakley, and that prior to the incident in question, he had not been informed of anyone tripping or falling in the area where plaintiff was injured.

Despain took several measurements at the incident site. He found that the length of the joint between the concrete sidewalk and the adjacent asphalt was 80 inches, measured from the curb to the inner edge of the sidewalk. At a distance of one foot from the curb, the concrete and asphalt surfaces were approximately even. At two feet from the curb, there was a height differential of approximately one-quarter inch between the two surfaces. At three feet from the curb, the height differential was approximately one-half inch, and at four feet from the curb (or more than halfway along the length of the joint), the differential was approximately one inch.

## B. Plaintiff's Opposition to the Motion for Summary Judgment

In opposition to the motion, plaintiff submitted evidence that she had never previously been in the area of the incident. She was wearing tennis shoes, was walking at a normal pace, and was looking straight ahead as she walked down the sidewalk. She was not under the influence of drugs, alcohol, or prescription medication. Before plaintiff fell, she did not see any cracks, holes, or other defects in the sidewalk.

Plaintiff stated in a declaration that the differential and unevenness between the concrete sidewalk and asphalt caused her to trip and fall. She was not certain of the exact area along the transition from the concrete sidewalk to asphalt that she fell. With her evidence, she included a photograph of the area with nearly the entire length of the joint between the concrete and asphalt circled, and identified the circled area as where she tripped and fell.

Approximately two months after the incident, plaintiff returned to the area to take photographs. She stated in her declaration, "After reviewing photographs of the area I took, I estimate the vertical differential between the sidewalk and the asphalt to be in excess of one inch." The trial court sustained Caltrans's objection to this statement on the ground it was speculative.

The trial court granted summary judgment to Caltrans, finding that the area at issue did not create a substantial risk of injury to plaintiff and that no circumstances rendered the defect in the sidewalk more dangerous than its size alone would suggest.[1] Plaintiff moved for reconsideration, and the trial court denied the motion.

## II. DISCUSSION

### A. Legal Standards on Summary Judgment

"We review a grant of summary judgment de novo. [Citation.] In performing our de novo review, we employ a three-step analysis. 'First, we identify the issues raised by the pleadings. Second, we determine whether the movant established entitlement to summary judgment, that is, whether the movant showed the opponent could not prevail on any theory raised by the pleadings. Third, if the movant has met its burden, we consider whether the opposition raised triable issues of fact.' [Citations.] To shift the burden, the defendant must conclusively negate a necessary element of the plaintiff's case or demonstrate there is no triable issue of material fact requiring a trial. [Citation.] If the evidence does not support judgment in the defendant's favor, we must reverse summary judgment without considering the plaintiff's opposing evidence. [Citation.] Any evidence we evaluate is viewed in the light most favorable to the plaintiff as the losing party; we strictly scrutinize the defendant's evidence and resolve any evidentiary

---

[1] "[A]n order granting summary judgment is not an appealable order. [Citations.] The appeal must be taken, instead, from a judgment entered on the basis of the summary judgment order. [Citations.]" (*Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7.) There appears to be no judgment in the record, but Caltrans has not moved to dismiss the appeal. "In the interests of justice and to avoid delay, we construe the order granting summary judgment as incorporating an appealable judgment, and the notice of appeal as appealing from such judgment. [Citations.]" (*Id.* at pp. 761–762, fn. 7.)

3

doubts or ambiguities in the plaintiff's favor. [Citation.]" (*Barber v. Chang* (2007) 151 Cal.App.4th 1456, 1462–1463, italics omitted.)

Evidence submitted in support of and in opposition to a motion for summary judgment must be admissible. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 (*Bozzi*).) "The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion. [Citations.] . . . Only *admissible evidence* is liberally construed in deciding whether there is a triable issue." (*Ibid.*) We review evidentiary rulings in summary judgment proceedings for abuse of discretion. (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169 (*Walker*).)

## B. Summary Judgment

### 1. *Caltrans Met its Burden*

Under Government Code section 835, a public entity may be held liable for an injury caused by a dangerous condition of its property. A public entity's property is in a dangerous condition when it "creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury." (Gov. Code, § 830, subd. (a).) A condition is not dangerous when it is "of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (Gov. Code, § 830.2.)

" '[P]ersons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition. The duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects.' " (*Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 26–27, fn. omitted (*Kasparian*).) As our high court has noted, "[a] city is not an insurer of its public

4

ways and is not bound to keep them so as to preclude the possibility of injury or accident therefrom." (*Whiting v. National City* (1937) 9 Cal.2d 163, 166 (*Whiting*).)

We employ a two-step process in determining whether a defect is trivial. "First, the court reviews evidence regarding the type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors . . . . If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law and grant judgment for the landowner. [Citation.]" (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 567–568 (*Stathoulis*).) These additional factors may include "lighting, debris, or a history of other similar injuries" (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 397), weather at the time of the accident, the plaintiff's knowledge of the area, and whether the pedestrian's view of the defect was obstructed (*Stathoulis*, 164 Cal.App.4th at pp. 567–568). In addition, the court should " 'view the intrinsic nature and quality of the defect to see if, for example, it consists of the mere nonalignment of two horizontal slabs or whether it consists of a jagged and deep hole.' " (*Kasparian*, *supra*, 156 Cal.App.4th at pp. 27–28.) The fact that a defect is plainly visible and that it had been used by many others without injury may be an indication that a defect is trivial. (*Whiting*, *supra*, 9 Cal.2d at pp. 165–166.)

Some courts have found that "height differentials of up to one and one-half inches [are] trivial as a matter of law. [Citations.]" (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 568; and see *Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 367 [one and one-half inch difference in elevation]; *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 725–727 [sidewalk slab raised three-quarters of a inch in elevation].) However, once the differential starts to exceed one inch, " 'courts have been reluctant to find that the defect is not dangerous as a matter of law.' [Citation.]" (*Stathoulis*, 164 Cal.App.4th at p. 568.) According to the evidence Caltrans submitted in support of its motion, the height differential was one-quarter of an inch to one-half inch in the middle of the area where plaintiff testified she fell and no more than one inch in any portion of that area. And although the evidence shows that the height differential varied over the width of the

5

sidewalk, the record does not show the edges were so "jagged" as to create a substantial risk of injury. (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927; and see *Kasparian*, *supra*, 156 Cal.App.4th at pp. 27–28.) We agree with the trial court that this suggests that the defect was trivial as a matter of law.

Nor do the surrounding circumstances indicate the defect was "sufficiently dangerous to a reasonably careful person" to create a substantial risk of injury. (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 568.) The incident took place on a dry, sunny morning. The color of the pavement changed from light to dark where the concrete met the asphalt. Despain, the maintenance supervisor for the area, was unaware of any prior instances in which people had tripped or fallen in the area.

The cases upon which plaintiff relies do not persuade us otherwise. In *Sheldon v. City of Los Angeles* (1942) 55 Cal.App.2d 690, a concrete slab in a sidewalk had settled, creating a graduated depression of up to one and one-half inches; immediately in front of the depression was a bench. (*Id.* at p. 692.) The plaintiff stepped down from a bus, circumnavigated the bench, and, upon turning past the bench, stepped into the deepest part of the depression. (*Ibid.*) The jury found in favor of the plaintiff. (*Id.* at p. 691.) On appeal, the city argued that the deficit in the sidewalk was trivial and minor as a matter of law. The court rejected this argument, stating only, "it is evident from an examination of the picture set forth above that the depression . . . was neither trivial nor minor." (*Id.* at pp. 692–693.) In contrast, here, the difference in elevation was no more than one inch and was significantly less in the middle of the area where plaintiff fell. Additionally, there were no obstacles in front of the seam in the location where plaintiff fell.

In *Kasparian*, the plaintiff fell on an uneven drain cover. Although the depth of the depression ranged only from 1/32 inch to 5/16 inch, there was evidence that other drain covers in the vicinity were flush with the brick paver surface, and the drain was not distinguishable by color or texture from the surrounding pavers, so could not be easily detected even in daylight. (*Kasparian*, *supra*, 156 Cal.App.4th at pp. 16, 28–29.) Here, plaintiff fell on the seam between concrete and asphalt surfaces, and the pictures of the

6

accident site show the change in surface was starkly visible. The plaintiff in *Johnson v. City of Palo Alto* (1962) 199 Cal.App.2d 148, 150, fell at 9:30 p.m.; street lights were on, but leaves on trees caused the sidewalk to be shadowy. The fall here, on the other hand, took place on a dry, clear morning, and there is no evidence of obstructed visibility. And the court in *Rodriguez v. City of Los Angeles* (1963) 215 Cal.App.2d 463, 467–468, concluded the question of whether a one-half to one inch defect in a sidewalk created a dangerous condition was properly submitted to the jury where at least four prior accidents had taken place at the same location. Here, there is no evidence of previous accidents.

    2. *Plaintiff Did Not Submit Admissible Evidence to Create Triable Issue*

    We next consider whether plaintiff met her burden to raise a triable issue of fact. In opposition to the motion, plaintiff submitted a declaration in which she estimated, based on her review of the photographs she took, that the differential was more than one inch. The trial court sustained Caltrans's objection to this statement on the ground that it was speculative. We see no abuse of discretion in this ruling.

    Plaintiff contends the trial court abused its discretion in refusing to admit the evidence of her estimate of the size of the differential. In support of her contention, she points out that "the sole declaration of a party opposing a summary judgment motion which raises a triable issue of fact is sufficient to deny that motion," except where the declaration is "facially . . . incredible as a matter of law." (*Estate of Housley* (1997) 56 Cal.App.4th 342, 359–360; and see *McManis v. San Diego Postal Credit Union* (1998) 61 Cal.App.4th 547, 555 [declarations in opposition to summary judgment suffice if they disclose existence of triable issue of fact].) As we have explained, however, declarations submitted in connection with a motion for summary judgment must show the declarant's personal knowledge and competency to testify and cannot include inadmissible opinion. (*Bozzi*, *supra*, 186 Cal.App.4th at p. 761.) Moreover, " 'a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]" [Citation.]' [Citation.]" (*All Towing Services LLC v. City of Orange* (2013) 220 Cal.App.4th 946, 954.) We review evidentiary rulings for abuse of discretion

7

(*Walker*, *supra*, 98 Cal.App.4th at p. 1169.) "The trial court's 'discretion is only abused where there is a clear showing [it] exceeded the bounds of reason, all of the circumstances being considered.' [Citation.]" (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 640.)

We see no abuse of discretion here. Plaintiff's declaration indicated that her estimate of the height differential was based not on measurements, nor on her examination of the sidewalk itself, but on her review of her photographs; and, it was only a vague estimate of the differential as being "in excess of one inch." As the court noted, defendant's evidence of the height of the differential was based on Despain's declaration that he took several measurements of the crack with a tape measure. In the circumstances, the trial court could reasonably conclude plaintiff's failure to provide any measurements of the site in question rendered her opinion of the size of the crack speculative.

Nor did plaintiff show that other factors rendered the defect more than trivial. We recognize there is evidence that plaintiff was unfamiliar with the area. (See *Stathoulis*, *supra*, 164 Cal.App.4th at pp. 567–568.) However, in light of the sunny, dry conditions and the abrupt change in color where the concrete portion of the sidewalk ceased and the asphalt began, we are not persuaded that conditions were such as to create a substantial risk of injury.[2] In the circumstances, the trial court correctly concluded plaintiff did not meet her burden to raise a triable issue of fact.

---

[2] In connection with the change in pavement surface, the trial court stated, "[F]or something to be dangerous, it's got to be something you don't notice. I mean, you look at the pictures, and, oh, my God, how could anybody in their right mind not see that there's going to be a change. [¶] The sidewalk ends, and there's this rural type asphalt and dirt pathing [*sic*] that goes the rest of the way." Plaintiff contends the trial court thereby improperly concluded she was guilty of negligence for failure to look at the ground. (See *Peters v. City & County of San Francisco* (1953) 41 Cal.2d 419, 425 [person using normal use of sidewalk not required to keep eyes fixed on ground].) We disagree. The court could properly comment on the fact that the shift from one type of pavement to another was plainly visible in the course of determining whether the surrounding circumstances rendered the defect non-trivial. (See *Whiting*, *supra*, 9 Cal.2d at p. 165; see also *Kasparian*, *supra*, 156 Cal.App.4th at pp. 26–27.)

8

### C. Motion for Reconsideration

#### 1. *Background*

Plaintiff moved for reconsideration based on assertedly new or different facts. (Code Civ. Proc., § 1008, subd. (a).)  In support of her motion, she submitted an expert declaration of an engineer, Laurence Neuman.  Neuman stated that he measured the variation in height between the concrete and asphalt surfaces and that the differential ranged from level at 18 inches from the curb face, to one-half inch at 30 inches from the curb, one inch at 42 inches from the curb, one and one-quarter inch at 54 inches from the curb, one and seven-eighths inch at 66 inches from the curb, and two and five-eighths inches at 78 inches from the curb, the inner edge of the sidewalk.  Neuman opined that the sidewalk was in a dangerous condition and presented a tripping hazard.  Plaintiff also submitted an additional declaration stating that she visited the scene approximately two months after she fell and that the differential of the sidewalk and asphalt in the area that caused the fall was in excess of one inch.

In a deposition, Neuman stated that the area plaintiff had identified as where she fell was in the half of the sidewalk nearest the street.

The trial court denied the motion for reconsideration, concluding that the evidence was not "new" evidence for purposes of a motion for reconsideration because it could have been presented in opposition to the motion for summary judgment.  The court also concluded that in any case, as to the portion of the sidewalk where plaintiff testified she fell, there was no substantial difference between the measurements defendant submitted in support of its motion for summary judgment and those plaintiff submitted in her motion for reconsideration.

#### 2. *Discussion*

Under Code of Civil Procedure section 1008, subdivision (a), a party may move for reconsideration of an order "based upon new or different facts, circumstances, or law," and must state "what new or different facts, circumstances, or law are claimed to be shown."  Moreover, the party must "provide a satisfactory explanation for the failure to produce the evidence at an earlier time." (*New York Times Co. v. Superior Ct.* (2005)

9

135 Cal.App.4th 206, 212 (*New York Times*).)  That is, "the information must be such that the moving party could not, with reasonable diligence, have discovered or produced it at the trial." (*Id.* at pp. 212–213.)  "A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard.  [Citation.]" (*Id.* at p. 212.)

We see no abuse of discretion here.  The asserted new fact was a set of measurements of the area where the sidewalk turned from concrete to asphalt.  The trial court could reasonably conclude that plaintiff could, with reasonable diligence, have produced this evidence in opposition to the motion for summary judgment.  (See *New York Times*, *supra*, 135 Cal.App.4th at pp. 212–213.)  In any case, as the trial court noted, Neuman's measurements of the portion of the sidewalk at which plaintiff testified she fell were similar to those Caltrans submitted in support of its motion for summary judgment: Both Neuman and Despain concluded that in the half of the sidewalk closest to the curb, the elevation of the asphalt portion over the asphalt portion of the sidewalk ranged from level to one inch.[3]  There was no abuse of discretion in the trial court's conclusion that the evidence was not new.

## III.  DISPOSITION

The judgment is affirmed.

---

[3] Plaintiff is bound by her deposition testimony of where she tripped and fell. (*Daddario v. Snow Valley, Inc.* (1995) 36 Cal.App.4th 1325, 1340–1341; *Thompson v. Williams* (1989) 211 Cal.App.3d 566, 573 ["After-the-fact attempts to reverse prior admissions are impermissible because a party cannot rely on contradictions in his own testimony to create a triable issue of fact"].)

10

_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.