[No. B024895. Second Dist., Div. Seven. Nov. 17, 1987.]

BULAH B. DOLQUIST, Plaintiff and Appellant, v.
CITY OF BELLFLOWER, Defendant and Respondent.

**COUNSEL**

Ackerman, Ling, Russell & Mirkovich and Joe Ling for Plaintiff and Appellant.

Clausen, Harris & Campbell, Marie D. Clause and Gregory P. Orland for Defendant and Respondent.

**OPINION**

**ROBERSON, J.\*** —Plaintiff, Bulah Dolquist, appeals from summary judgment in favor of defendant City of Bellflower and against plaintiff in a personal injury action.

## I

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Nature of Action*

This action arose as a result of personal injuries allegedly sustained in a fall by plaintiff (hereinafter referred to as appellant), when her shoe heel caught on a piece of rebar (reinforcing steel) protruding from the top of a concrete tire stop located on property owned by defendant (hereinafter referred to as respondent).

The alleged accident occurred on April 11, 1984, and on December 17, 1984, appellant filed her complaint in the Los Angeles Superior Court for personal injuries she claims to have sustained in the fall. The complaint alleges among other things that appellant's injuries were proximately caused by respondent's negligence in the ownership, construction, management, maintenance and operation of a dangerous condition on public property.

---

\* Assigned by the Chairperson of the Judicial Council.

## B. *Grant of Summary Judgment*

After filing its answer to appellant's complaint in which respondent asserted as one of its affirmative defenses that appellant's purported injuries were the result of a "trivial defect" as defined by Government Code section 830.2, respondent filed its motion for summary judgment.[1]

The motion for summary judgment was heard in the superior court on November 6, 1986, at which time it was granted. Judgment was entered on November 17, 1987. This appeal followed.

## II

## FACTS

On April 11, 1984, appellant, a 68-year-old woman, parked her automobile in a parking lot behind a commercial establishment located on Bellflower Boulevard in the City of Bellflower, to visit a friend who was the co-owner of one of the shops in the complex.[2] She alighted from her automobile, which as usual was parked behind her friend's place of business, stepped across a parking abutment and entered his store to visit him. At approximately 5 p.m.[3] or thereabouts, appellant left her friend's place of business, again crossed the parking abutment to return to her automobile. After arriving at her automobile she yet again crossed the parking abutment and began walking in the direction of her friend's store to assist him with some boxes. While walking in the direction of the business she raised her foot to step over one of the parking abutments; as she was stepping over the abutment her right shoe heel caught a portion of a rebar (steel reinforcement)[4] that protruded out of the parking abutment causing her to lose her

---

[1] Respondent's answer to the complaint was filed on January 17, 1985, and its motion for summary judgment was filed on October 6, 1986.

Government Code section 830.2 reads as follows: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

[2] Appellant had parked in the lot on prior occasions. The area where the accident occurred was on a divider directly across from the rear door of the building (appellant's friend's place of business) located at 16512 Bellflower Boulevard, Bellflower, California.

An alley runs along the back of the building in which appellant's friend's business is located, then there is a divider, and then the parking lot.

[3] At the time of the accident appellant was not carrying anything in her hands and she was wearing eyeglasses. The accident occurred in bright daylight and the weather was dry.

[4] At her deposition appellant indicated that the steel protrusion (rebar) was between one-half inch to one inch in diameter.

balance and fall forward. As she fell forward appellant put her hands forward so that she landed on her extended hands. In the fall she sustained injuries to her left arm and shoulder; she also sustained a broken bone in her elbow.

At her deposition, appellant initially testified that she looked down at the parking abutment as she crossed over it and saw the reinforcement rod. However, she later testified that she did not see the rod as she crossed over the abutment. She explained that even though she saw a hole she did not see the reinforcement rod because it looked flush to her.

On September 14, 1984, respondent caused an inspection to be made of the area where appellant fell. At that time it was determined that the "steel rod" (rebar) which protruded from the concrete (automobile abutment) was one-quarter of an inch above the concrete.

Prior to appellant's accident of April 11, 1984, respondent had not been notified of any injury, accident, or other complaint from anyone concerning the steel rod; nor had respondent prior to the accident in issue, ever been notified of any injury, accident or other complaint involving the area in question.[5]

The city parking lot is separated from the alley by a thirty-six-inch-wide divider, constructed of five and three-sixteenths-inch-wide concrete tire-stops placed in parallel lines and filled with asphaltic concrete. The tire-stops are held in position on the asphaltic concrete surface by rebar (reinforcing steel) driven into the asphaltic concrete surface. Two rebar sections were used for each of the concrete tire-stop sections.

In the area where the accident occurred, the rebar was not flush because the section of it extended above the surface of the tire-stop, approximately one-quarter of an inch. In this location, the maximum height above the asphaltic concrete surface was five and seven-sixteenths inches.

Charles E. Turnbow, a professional safety engineer licensed by the State of California, retained by appellant's attorney, after having considered the circumstances surrounding the claimed dangerous condition gave his opinion that "the extension of the rebar above the flat walking surface at a curb level creates a significant and serious tripping hazard."

These facts were presented to the court in respondent's motion for summary judgment and in appellant's opposition thereto.

---

[5] The concrete abutment located behind 16512 Bellflower Boulevard (the location of appellant's accident) was installed by the City of Bellflower in the latter part of 1980. The property was owned by the City of Bellflower.

## III

### DISCUSSION

"The rules governing summary judgment are well established. ■ (1) Because summary judgment is a drastic remedy which eliminates the right to a trial on the merits, it must be granted with caution and only after the trial court determines 'that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.] (2) Further, ' "[T]he party moving for summary judgment has the burden of showing by declarations or affidavits setting forth facts admissible as evidence in a trial that the claims or defenses of the adverse party are entirely without merit on any legal theory . . . ." ' " (*Stalnaker* v. *Boeing Co.* (1986) 186 Cal.App.3d 1291, 1297 [231 Cal.Rptr. 323].)

Thus a prerequisite to summary judgment is that ". . . all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see also *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].) ■ Whereas in the case at bar, a *defendant* seeks summary judgment, his declarations and evidence must either establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case. If defendant establishes the foregoing, and the plaintiff's declaration in reply does not show that there is a triable issue of fact with respect to that defense or that an essential element exists, the summary judgment should be granted. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331 [138 Cal.Rptr. 670].)

■ The thrust of respondent's argument, which was accepted by the court below in granting summary judgment, was that the *quarter-inch* protrusion of the steel reinforcement rod (rebar) on which appellant caught her heel and fell, was a "trivial defect" within the meaning of Government Code section 830.2.[6]

Before discussing the issue of whether the "defect" in the case at bar was "trivial" as a matter of *law*, we should first review the pertinent code

---

[6]Government Code section 830.2 "Law Revision Commission Comment" reads as follows: "This section declares a rule that has been applied by the courts in cases involving dangerous conditions of sidewalks. Technically it is unnecessary, for it merely declares the rule that would be applied in any event when a court rules upon the sufficiency of the evidence. It is included in the chapter to emphasize that the courts are required to determine that there is evidence from which a reasonable person could conclude that a substantial, as opposed to a possible, risk is involved before they may permit the jury to find that a condition is dangerous."

sections involved. Government Code section 830 defines the concept of dangerous condition insofar as that term applies to dangerous conditions of public property, as follows: "(a) 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Government Code section 830.2 tells us when, within the meaning of the chapter of the Government Code dealing with dangerous conditions of public property, a condition is not dangerous: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable . . . ."

And finally, Government Code section 835 specifies the conditions of liability as follows: ". . . a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] . . . or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Although it is for the court to determine whether, as a matter of law, a given defect is not dangerous, the court should *not* rely solely on the size of the particular defect in making that determination. "While size may be one of the most relevant factors to the decision, it is not always the sole criterion." (*Fielder* v. *City of Glendale* (1977) 71 Cal.App.3d 719, 734 [139 Cal.Rptr. 876].) In making the determination of whether a claimed defect is trivial as a matter of law and therefore not a "dangerous condition" within the meaning of Government Code section 830, in the context of a claim against a public entity, the court should not only consider the size of the defect; other criterion should also be considered including circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract size would indicate. (*Id.* at pp. 731-732.)

Some of the circumstances the court should consider in making its determination are whether the defect consisted of a mere difference in level of

two adjacent horizontal slabs as distinguished from a protrusion such as a piece of steel reinforcement (rebar) sticking above the concrete, whether the accident occurred in an area where the view of the defect is obstructed, whether the defect resulted in injuries to persons other than the claimant,[7] the shape and configuration of the defect, whether it occurred at night in an unlighted area, and any other conditions surrounding the defect.

"As to what constitutes a dangerous or defective condition no hard-and-fast rule can be laid down, but each case must depend upon its own facts." (*Fackrell* v. *City of San Diego* (1945) 26 Cal.2d 196, 206 [157 P.2d 625, 158 A.L.R. 773].) Furthermore, ". . . all of the conditions surrounding the defect must be considered in the light of the facts of the particular case . . . if reasonable minds can differ on the question it is one of fact . . . it is only when reasonable minds must come to the conclusion that the defect is so trivial that a reasonable inspection would not have disclosed it, that the question becomes one of law." (*Gentekos* v. *City & County of S. F.* (1958) 163 Cal.App.2d 691, 700 [329 P.2d 943].) We do not reach that conclusion here.

■ We are not persuaded by respondent's argument that since the protrusion of the rebar (steel reinforcement) that caused appellant's fall was a quarter of an inch above the concrete surface, it only constituted a "trivial defect." The application of a strict tape measure approach to determine whether a defect is trivial as a matter of law, disregards the fact that other factors and circumstances involved in a particular case could very well result in an entirely different conclusion from one arrived at by simply measuring the size of a defect.

In reviewing the circumstances surrounding the accident, in the case at bar, we note that in the area where the accident occurred the rebar was not flush and it extended above the surface of the tire-stop. In this location, the maximum height above the asphaltic concrete surface was five and seven-sixteenths inches. Appellant's expert indicated in his declaration that "[a]brupt changes of elevation of 1/4 of an inch generally do not constitute a hazard to the pedestrian when such a change of elevation occurs on a flat walkway. However, the extension of a rebar above the flat walkway surface at a curb level creates a . . . tripping hazard. An individual attempting to

---

[7] Although no evidence has been presented of the occurrence of other accidents at the same location as appellant's, the occurrence of, or lack of the occurrence of other accidents at the same location is a circumstance that the court should consider in determining whether a condition is or is not dangerous as a matter of law. The weight to be given by the court to its (other accidents) presence or absence must be determined in the light of all of the circumstances and other facts surrounding each particular case. The court's decision should not be based solely on the occurrence of or the absence of other accidents.

negotiate such an area, and encountering the protrusion of the rebar above the walkway surface, would likely catch their foot and could suffer loss of balance and . . . fall.

". . . In this case, the three foot wide divider extends 123 feet from the edge of the public sidewalk . . . in a southerly direction . . . . the accident occurred approximately midway along the length of this divider. Because the driveway contigious to the separator is subject to moderate vehicular traffic, the pedestrians attention is likely to be diverted from the conditions along their pathway. The presence of vehicles parked in the parkway stalls abutting the eastside of the divider could obscure the pedestrian's vision of the conditions, thereby greatly increasing the risk of injury."

Although it is true that the accident happened in broad daylight, there is conflict as to whether appellant saw the rod as she crossed over the abutment (see facts, *ante*) or whether if she did see it, it looked flush to her (she so testified at her deposition), some *protrusions* become more dangerous the less visible they are.

Respondent cites the case of *Barrett* v. *City of Claremont* (1953) 41 Cal.2d 70 [256 P.2d 977] (a sidewalk case)[8] as support for its argument that in a "protrusion" case, a quarter of an inch is a "trivial defect." As we read the *Barrett* case, we find it to be distinguishable from the case at bar. In *Barrett,* the city had constructed a 10-foot-wide sidewalk, consisting of concrete slabs about 4 inches thick. A space of one-half inch extended the entire width of the walk to accommodate changes in temperature. Although standard building practices called for filling such space with asphaltum to a height of one-quarter to one-half inch below the top of the contiguous slabs, the filler in the joint in question was made level with the surface of the sidewalk. The black filler material readily absorbs the rays of the sun and in warmer weather the concrete slabs expand, pushing the filler material up and out of the joint. As a result of this process, asphalt was expelled from the joint creating a ridge about five inches wide. At the center, its highest point, the ridge was about one-half inch above the surface of the sidewalk and tapered gradually on each side to the level of the walk. As Miss Barrett stepped upon the ridge (because of a crust of dirt and other substances on it the ridge appeared to be normal), she placed her full weight upon her right foot, the tip of her toe caught or *stuck in the substance* retarding her forward motion and throwing her off balance. In reversing a judgment in favor of Miss Barrett for injuries sustained by her in the ensuing fall, the Supreme Court found the defect to be "minor," and thus concluded as a

[8] In reaching its conclusion that the defect was trivial, the Supreme Court considered the measurement of the size of the defects in a number of "sidewalk defect" cases.

matter of law, that "no injury would be sustained by one exercising reasonable care in the use of the sidewalk." (41 Cal.2d at p. 75.)

Unlike the case before us where a *single* piece of steel reinforcement extended *above the surface of the tire-stop,* in a location where the maximum height above the asphaltic concrete surface was five and seven-sixteenths inches and where appellant stepped from one surface to another level; the condition that caused the injury in *Barrett* was due to the softening of a ridge on the surface of the sidewalk. Although the ridge which caused Miss Barrett to fall was one-half inch above the sidewalk surface at its highest point, "it did not rise sharply to that height but *curved gradually upward from each edge toward the center,* much in the same manner as a common doorsill." (41 Cal.2d at p. 74.) The accident occurred *not* because of the *protrusion* per se (which was clearly visible), i.e., it did not occur by virtue of plaintiff tripping over it, it was caused when her foot caught *in the substance* that had *become soft due to the weather.*

Unlike sidewalk cases, where the planes are horizontal, a protrusion such as a piece of metal rebar located in an area where foot traffic occurs poses a greater danger, especially where, as here, persons must step up from the plane they are walking on to a higher plane in order to continue on their route. In the case at bar, the protrusion was large enough to cause an injury while being small enough to avoid easy detection. The condition was not one that resulted from wear or tear, nor was it the result of a change in the weather; it was one that existed from the date of installation of the concrete tire-stop and remained constant.[9]

In one of the declarations submitted by the parties to the court below, one Johnnie May Evington (an employee of the establishment appellant had been visiting just before the accident) indicated that the city had done the parking lot over several months prior (to the accident in question) and that she had noticed that not all of the metal pieces were flush with the cement and that some were higher than others.

---

[9] Appellant's expert (Charles E. Turbnow - professional safety engineer) indicated that in his survey of the rebar used to affix the tire-stops in position the subject rebar (the one causing appellant's fall) was the only one with one-half inch diameter, the rest being three-sixteenths inch and that this difference in diameter greatly affects the installer's ability to drive the rebar into the asphaltic concrete. He described the condition created by the protruding rebar as an "unreasonable hazard" presented to the pedestrian "since ordinary care and practice in installing the rebar would have eliminated the hazard."

## IV

### CONCLUSION

In conclusion, inasmuch as this case reaches us on appeal from a summary judgment in favor of respondent (defendants), we need only determine whether the alleged "affirmative defense" of "trivial defect" would bar appellant's cause of action against respondent. We do not conclude from our reading of the record that the defect complained of was trivial as a matter of law.

Although it is for the courts to determine whether as a matter of law, a given defect is dangerous, the court should not rely solely on the size of the defect. The court's determination of dangerousness should only be made after it has considered all of the circumstances surrounding the accident in the particular case and after having looked at other relevant factors. If available, evidence on the issue of dangerousness leads to the conclusion that reasonable minds may differ, then summary judgment is not proper. Such is the case presented by the record in the matter now before us.

## V

### DISPOSITION

For the foregoing reasons, the judgment of the trial court is reversed. Appellant shall recover her costs.

Lillie, P. J., and Thompson, J., concurred.