Filed 5/26/16  Tiainen-Bennett v. KRGW Fujimoto LLC CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HELENA TIAINEN-BENNETT,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>KRGW FUJIMOTO LLC et al.,<br><br>      Defendants and Respondents. | A144430<br><br>(Alameda County<br>Super. Ct. No. RG11571525) |

Plaintiff Helena Tiainen-Bennett was injured when she tripped and fell on a public sidewalk in the City of Berkeley (City).  She filed a lawsuit against the City and the owner of the property adjoining the sidewalk, defendant KRGW Fujimoto LLC (KRGW), alleging causes of action for negligence and for maintaining a dangerous condition of public property.  Both the City and KRGW moved for summary judgment on the ground the alleged dangerous condition was trivial as a matter of law.  The trial court granted the motions.  We affirm the judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At her deposition, plaintiff testified that the accident occurred around 5:00 p.m. on Saturday, April 24, 2010, as she was walking on the sidewalk that abuts the parking lot of a market that is owned by KRGW.  The surface area near the accident site was dry.  She believed her fall occurred when her right foot encountered an offset sidewalk slab.[1]  She identified two photographs taken of the site by her attorney shortly after the accident.  A

_____

[1] As a result of the fall, plaintiff fractured her knee and elbow, both of which required surgery.

tape measure placed next to an upraised slab shows the offset to be no more than three-quarters of an inch. Plaintiff also stated she was present when the photograph was taken and recalled the offset as having been measured at three-quarters of an inch. The area was near the remnants of a pole that had been cut off at its base. She did not know whether she had tripped on the cut-off pole or the offset slab.

On April 18, 2011, plaintiff filed a complaint against defendants. The complaint alleges a cause of action against KRGW for negligence in managing the property adjacent to the sidewalk. It also alleges a second cause of action against the City for maintaining a dangerous condition of public property.

KRGW and the City both filed motions for summary judgment, asserting the vertical height of the offset at the sidewalk slab where plaintiff tripped was no more than three-quarters of an inch, which, as a matter of law, constituted a trivial defect and was therefore not actionable.

On September 5, 2012, the trial court issued its amended orders granting defendants' motions for summary judgment. The court found the undisputed facts established that the sidewalk offset where plaintiff's accident occurred was "at most a trivial defect," and not a dangerous condition giving rise to liability on the part of either defendant. Specifically, the court found the sidewalk defect was no more than three-quarters of an inch. It also concluded there were no unusual circumstances affecting the sidewalk or the height differential, and there were no known complaints or accidents concerning that location prior to plaintiff's accident. The court deemed the possible presence of daytime shadows to be immaterial to her allegation that the sidewalk was in a dangerous condition.

On January 22, 2015, the trial court filed its judgment in favor of defendants. This appeal followed.

## DISCUSSION

### I.     *Standard of Review*

"We review a grant of summary judgment de novo. [Citation.] In performing our de novo review, we employ a three-step analysis. 'First, we identify the issues raised by

2

the pleadings.  Second, we determine whether the movant established entitlement to summary judgment, that is, whether the movant showed the opponent could not prevail on any theory raised by the pleadings.  Third, if the movant has met its burden, we consider whether the opposition raised triable issues of fact.'  [Citations.]  To shift the burden, the defendant must conclusively negate a necessary element of the plaintiff's case or demonstrate there is no triable issue of material fact requiring a trial.  [Citation.] If the evidence does not support judgment in the defendant's favor, we must reverse summary judgment without considering the plaintiff's opposing evidence.  [Citation.] Any evidence we evaluate is viewed in the light most favorable to the plaintiff as the losing party; we strictly scrutinize the defendant's evidence and resolve any evidentiary doubts or ambiguities in the plaintiff's favor." (*Barber v. Chang* (2007) 151 Cal.App.4th 1456, 1462–1463, italics omitted.)

Evidence submitted in support of and in opposition to a motion for summary judgment must be admissible.  (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.)  "The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion. [Citations.]  . . . Only admissible evidence is liberally construed in deciding whether there is a triable issue." (*Ibid.*, italics omitted.)  We review evidentiary rulings in summary judgment proceedings for abuse of discretion.  (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.)

## II.     *Plaintiff's Brief Fails to Provide Proper Citations to the Record*

As KRGW correctly notes, an appellant's opening brief is required to provide "a summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C).)  In addition, each brief must "[s]upport *any* reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C), italics added.)  Plaintiff's counsel has essentially failed to support any factual matters in the opening brief by specific

3

reference to volume and page number in the record.  Instead, the brief sets forth in a footnote a single list referring to 96 pages appearing in various parts of the record.

While KRGW pointed out this defect in its responsive brief, plaintiff's counsel made no effort to correct this error in the reply brief.  Nor has he requested leave to file a corrected opening brief.  Instead, he suggests that his manner of referencing the record is "more helpful" to this court because we can "conveniently" bookmark the relevant pages in the clerk's transcript.  He clearly misapprehends his duty on appeal:  " 'It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contention on appeal.  [Citation.]  If no citation "is furnished on a particular point, the court may treat it as waived." ' " (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management LLP* (2011) 201 Cal.App.4th 368, 384.)

The problem here is that for each of the countless "facts" referenced throughout plaintiff's opening brief, the reader is apparently expected to return to the footnote and read through the 96 noncontiguous pages referred to, in hopes of finding the particular fact alleged to support the statement made in the brief.  It is not the burden of this court to search through these pages and determine which evidence plaintiff is referring to in her citations and how this evidence proves her point:  "We are not required to search the record to ascertain whether it contains support for [an appellant's] contentions." (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545.)

The purpose of requiring record citations is not merely formulaic.  Rather, it is to allow justices and staff attorneys to find facts in the record when evaluating arguments in the brief.  (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16.)  By failing to specify which aspects of the record actually support her claims, " ' "[i]nstead of a fair and sincere effort to show that the trial court was wrong, [plaintiff's] brief is a mere challenge to [defendants] to prove that the court was right." ' " (*People v. Dougherty* (1982) 138 Cal.App.3d 278, 283.)  Notwithstanding plaintiff's counsel's disregard of the rules, we have examined the record and conclude the evidence amply supports the trial court's judgment.

### *III. Defendants Met Their Burden on Summary Judgment*

Under Government Code section 835, a public entity may be held liable for an injury caused by a dangerous condition of its property. A public entity's property is in a dangerous condition when it "creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury. . . ." (Gov. Code, § 830, subd. (a).) A condition is not dangerous when it is "of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (Gov. Code, § 830.2.)[2]

" '[P]ersons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition. The duty of care imposed on a property owner, even one with actual notice, does not require the repair of minor defects.' " (*Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 26–27 (*Kasparian*).) "Courts have referred to this simple principle as the 'trivial defect defense,' although it is not an affirmative defense but rather an aspect of duty that plaintiff must plead and prove." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927 (*Caloroso*).) As our high court has noted, "a . . . city is not an insurer of its public ways and is not bound to keep them so as to preclude the possibility of injury or accident therefrom." (*Whiting v. City of National City* (1937) 9 Cal.2d 163, 166 (*Whiting*).)

We employ a two-step process in determining whether a defect is trivial. "First, the court reviews evidence regarding the type and size of the defect. If that preliminary analysis reveals a trivial defect, the court considers evidence of any additional factors . . . . If these additional factors do not indicate the defect was sufficiently dangerous to a reasonably careful person, the court should deem the defect trivial as a matter of law and grant judgment for the landowner." (*Stathoulis v. City of Montebello* (2008)

---

[2] The "trivial defect defense" is also available to private, nongovernmental landowners. (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 398–399.)

164 Cal.App.4th 559, 567–568 (*Stathoulis*).) These additional factors may include "lighting, debris, or a history of other similar injuries" (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 397 (*Ursino*)), the weather at the time of the accident, the plaintiff's knowledge of the area, and whether a pedestrian's view of the defect was obstructed (*Stathoulis,* at pp. 567–568). In addition, the court should " 'view the intrinsic nature and quality of the defect to see if, for example, it consists of the mere nonalignment of two horizontal slabs or whether it consists of a jagged and deep hole.' " (*Kasparian, supra,* 156 Cal.App.4th at p. 27.) The fact that a defect is plainly visible and that it had been used by many others without injury may indicate that a defect is trivial. (*Whiting, supra,* 9 Cal.2d at pp. 165–166.)

While plaintiff speculates to the contrary, it is undisputed that the offset between the section of the sidewalk involved in this accident is no greater than three-quarters of an inch.[3] Even if one could infer the offset was greater than this measurement, some courts have found that "height differentials of up to one and one-half inches [are] trivial as a matter of law." (*Stathoulis, supra,* 164 Cal.App.4th at p. 568; see *Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 367 [one and one-half inch difference in elevation]; *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 725–727 (*Fielder*) [sidewalk slab raised three-quarters of a inch in elevation].) While it is true that once the differential starts to exceed one inch, " 'courts have been reluctant to find that the defect is not

_____

[3] We have viewed a digital image of the photographs plaintiff's attorney took of the offset, which includes a tape measure that clearly shows the offset to be no more that three-quarters of an inch. In her statement of undisputed material facts, she alleged that "[t]he size of the obstruction was, more likely than not, greater than ¾ inch" based on the fact that the measuring tape in the photograph had been placed near the western edge of the sidewalk. She claimed her fall occurred when her foot struck a portion of the raised slab at a point where "the rise was greater." She offered precisely zero evidence as to the measurement of this purportedly "greater" rise. "A party may not avoid summary judgment based on mere speculation and conjecture [citation], but instead must produce admissible evidence raising a triable issue of fact." (*Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 595–596.)

dangerous as a matter of law.' " (*Stathoulis,* at p. 568.) Here, plaintiff does not claim the offset exceeds one inch in the differential at any point.

Nor do the surrounding circumstances indicate the defect was otherwise "sufficiently dangerous to a reasonably careful person" to create a substantial risk of injury. (*Stathoulis, supra,* 164 Cal.App.4th at p. 568.) The incident occurred on a dry, sunny afternoon. A declaration submitted by the sidewalk inspector for the City's Public Works Department states that since he started working in that position in March 2006, he had not received any complaints about the sidewalk on the block where plaintiff fell.

Plaintiff does not dispute that there is no history of known accidents, falls, or complaints about the site. She also does not affirmatively assert that the cut-off pole played a part in her fall. Instead, plaintiff points to shadows allegedly cast by a nearby tree, as well as to caked-in debris in the space between the mismatched sidewalk flags, that allegedly obscured her perception of the defect. The mere existence of daytime shadows does not transform a three-quarter-inch offset into a dangerous condition of public property. (See *Caloroso, supra,* 122 Cal.App.4th at p. 929.) Additionally, based on the photographs in the record, the rise does not appear to be obstructed by dirt or debris.[4]

The cases upon which plaintiff relies are not persuasive. In *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261 (*Dolquist*), the plaintiff was stepping over a concrete tire stop in a parking lot when she tripped on a piece of rebar that projected a quarter of an inch above the tire stop. (*Id.* at pp. 264–265.) There had been no previous accidents or complaints involving the rebar. (*Id.* at p. 265.) The trial court granted summary judgment for the public entity defendant on the ground that the risk was trivial.

---

[4] Plaintiff also asserts the height differential is harder to notice than it would have been had it been substantially larger, and claims she had never walked on this stretch of sidewalk before. She also contends her awareness of the sidewalk was obstructed by the parking lot she had to traverse to reach the sidewalk, which was filled with cars and lined by a row of trees that blocked her vision of the sidewalk's surface. None of these factors suggest to us that the defect presented a substantial risk of injury to a reasonable careful person using the sidewalk.

(*Id.* at p. 266.) The appellate court reversed. It held that a jury could find the rebar created a substantial risk of injury. (*Id.* at pp. 267–270.) It explained that "the protrusion was large enough to cause an injury while being small enough to avoid easy detection. The condition was not one that resulted from wear or tear, nor was it the result of a change in the weather; it was one that existed from the date of installation of the concrete tire-stop and remained constant." (*Id.* at p. 270.)

Here, unlike in *Dolquist, supra*, 196 Cal.App.3d 261, it is significant that the defect was the result of ordinary wear and tear, likely caused by an encroaching tree root: " '[It] is a matter of common knowledge that it is impossible to maintain a sidewalk in a perfect condition. Minor defects are bound to exist. A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to travel. Minor defects due to continued use, or action of the elements, or other cause, will not necessarily make [a public entity] liable for injuries caused thereby. What constitutes a minor defect is not always a mere question of fact. If the rule were otherwise [a public entity] could be held liable upon a showing of a trivial defect.' " (*Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 73, quoting *Whiting v. City of National City* (1937) 9 Cal.2d 163, 165.) We note it is common for tree roots to create distortions in a sidewalk's surface. Additionally, the plane of the defect was horizontal, a factor noted by the *Dolquist* court as creating a lesser danger to pedestrians. (*Dolquist*, at p. 270.)

In *Stathoulis, supra,* 164 Cal.App.4th 559, the defect, a "gouge mark," did not exceed one inch, but the appellate court reversed an order granting summary judgment. The *Stathoulis* court held that "size alone is not determinative of whether a rut presents a dangerous condition." (*Id.* at p. 568.) Unlike the present case, that case concerned not one but "three holes in the street, about nine feet from the curb. The southernmost gouge was 20 inches long, with a maximum width of six and one-half inches and a maximum depth of one inch. The middle gouge was 19 inches long, had a maximum width of four and one-half inches, and was half an inch deep. The northernmost hole was 24 inches

long, a maximum of five inches wide, and had a maximum depth of one inch.  The holes were one to four inches apart." (*Id.* at p. 564.)

The *Stathoulis* court disagreed with the municipality's contention that the defects were trivial as a matter of law.  (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 565.)  Significantly, there was some evidence complaints had been lodged with the municipality concerning the street's conditions.  Additionally, "the presence of not one, but three, irregularly shaped and sizeable holes of about an inch deep flanking one another in the street" may have both increased the risk of falling and decreased the likelihood of regaining one's balance before hitting the ground.  While a still a close case, the court found summary judgment to be inappropriate.  (*Id.* at p. 569.)

Here, the height differential was less than one inch and there is no evidence that any other defect on the sidewalk contributed to plaintiff's accident.  Furthermore, we have already considered the other factors noted in *Stathoulis*, such as "the nature and quality of the defect, the time of day and lighting conditions when the accident occurred, and whether there is evidence anyone else has been injured by the same defect." (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 568.)  Based on the undisputed material facts of this case, even under *Stathoulis* we find no triable issue exists regarding dangerousness of the defect.

Finally, plaintiff erroneously relies on *Johnson v. City of Palo Alto* (1962) 199 Cal.App.2d 148 (*Johnson*), a case that has been superseded by the Government Claims Act (Gov. Code, § 810 et seq., added by Stats. 1963, ch. 1681, § 1, p. 3266 (Act)) as explained by the Supreme Court in *Brown v. Poway Unified School Dist*. (1993) 4 Cal.4th 820, 829 (*Brown*).  In *Johnson,* the appellate court had affirmed judgment in favor of the plaintiff where a difference in height of one-half inch between sidewalk edges had caused her to fall.  (*Johnson,* at p. 150.)  The provision of the Act at issue in *Brown* "was expressly intended to abrogate a rule to the effect that 'the happening of the accident is evidence that public property was in a dangerous condition' " (*Brown*, at p. 831.)  The court explained this was because "[t]he rule had occasionally led to the imposition of liability on public entities for relatively trivial defects in, and unforeseeable

9

uses of, public property," citing to *Johnson* as one such example. (*Ibid.*) Thus, the case does not assist plaintiff here.

On the basis of the undisputed evidence before the trial court, we are guided by the court's observation in *Fielder, supra,* 71 Cal.App.3d at pages 725 to 726: "[W]here a sidewalk slab is raised in elevation by only about three-fourths of an inch, such a 'defect' is not dangerous as a matter of law. This is because it is impossible for a city to maintain its sidewalks in perfect condition. Minor defects nearly always have to exist. The city is not an insurer of the public ways against all defects. If a defect will generally cause no harm when one uses the sidewalk with ordinary care, then the city is not to be held liable if, in fact, injury does arise from the defect."[5]

## IV. *Plaintiff's Evidentiary Objections Were Properly Overruled*

Plaintiff objected to virtually all of the evidence presented in both defendants' statements of undisputed material facts. The court overruled all of her objections, finding that they failed to comply with California Rules of Court, rule 3.1354(b) because they went to defendants' characterization of evidence and not to the evidence itself.[6] For

---

[5] Plaintiff also claims the court erred in excluding her expert witness evidence. The conclusion of whether the trivial defect doctrine applies is a matter of law for the court, not for an expert. (See *Stathoulis, supra,* 164 Cal.App.4th at p. 567 [trivial defect doctrine "permits a court to determine whether a defect is trivial as a matter of law, rather than submitting the question to a jury"]; *Ursino, supra,* 192 Cal.App.3d at p. 399 [same].) Thus, the expert witness's conclusions in his declaration that the defect was not trivial are not determinative. (See *Burton v. Sanner* (2012) 207 Cal.App.4th 12, 20–21 [expert opinion not admissible when it " 'amounts to nothing more than an expression of his or her belief on how a case should be decided' "]; *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 532–533, fn. 3 [" ' "manner in which the law should apply to particular facts is a legal question and is not subject to expert opinion" ' "]; *Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178 ["[t]here are limits to expert testimony, not the least of which is the prohibition against admission of an expert's opinion on a question of law"]; *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1634–1637 [expert opinion inadmissible on questions of law to be decided by trial court].)

[6] More specifically, California Rules of Court, rule 3.1354(b) provides: "Each written objection must be numbered consecutively and must: [¶] (1) Identify the name of the document in which the specific material objected to is located; [¶] (2) State the exhibit,

10

example, she repeatedly raised a generic relevance objection, even as to the unquestionably undisputable evidence that the accident occurred on the sidewalk adjacent to KRGW's property:  "Objection, Relevance, since the statement does not go to the only matter in dispute in this motion, which is whether the at-issue defendant can be deemed NON-dangerous as a matter of law, which it cannot, under any stretch of the imagination."

We have reviewed each and every of one of the overruled objections.  It bears emphasizing that plaintiff made relevance objections to nearly every single piece of evidence offered by defendants.  She repeatedly asserted this objection to many undeniably true evidentiary statements, including statements made by her at her deposition.  Relevance objections do not create triable issues of material fact.  Rather, they merely address the weight to be accorded to each fact. The trial court did not abuse its discretion in overruling her objections.

**DISPOSITION**

The judgment is affirmed.

---

title, page, and line number of the material objected to; [¶] (3) Quote or set forth the objectionable statement or material; and [¶] (4) State the grounds for each objection to that statement or material."

_____

DONDERO, J.

We concur:

_____

MARGULIES, Acting P. J.

_____

BANKE, J.

A144430

12