Filed 1/22/21  Norris v. Lennar Homes of Cal. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| EVA NORRIS, | |
| Plaintiff and Appellant, | E073981 |
| v. | (Super.Ct.No. RIC1807837) |
| LENNAR HOMES OF CALIFORNIA, INC., et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Chad W. Firetag, Judge.  Affirmed.

Carpenter, Zuckerman & Rowley, Gregory A. Coolidge and Gary S. Lewis for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Michael S. Moss and Ernest Slome for Defendants and Respondents.

Plaintiff Eva Norris appeals from the summary judgment entered in favor of Lennar Homes of California, Inc. (Lennar) and Marathon General, Inc. (Marathon)

(collectively, defendants). She argues that the trial court erred by concluding that a displacement between the asphalt and the gutter upon which she tripped was trivial as a matter of law. We affirm.

BACKGROUND

A.     *The Paving Project*

Lennar contracted with Marathon to pave the streets with asphalt in the Harvest Villages housing subdivision in Jurupa Valley, California. The paving involved a two-step process. In the first step, Marathon pours a base layer of asphalt after the concrete gutter has been poured. The base asphalt layer is left exposed during construction of the subdivision and absorbs any damage caused during that period. The base pavement layer is not flush with the gutter. Once residential capacity in the housing subdivision reaches 80 percent, a second layer of asphalt is poured, which is referred to as "cap-pavement." When the cap pavement layer is poured, the asphalt pavement becomes flush with the gutter. In Harvest Villages, the cap pavement layer was poured in July 2017.

B.     *The Incident*

In June 2017, before the cap pavement layer had been poured, Norris and a female friend drove to the friend's parents' home on a street in Harvest Villages. Norris had never before visited the Harvest Villages subdivision. Norris and her friend arrived while it was daylight, sometime between 5:00 p.m. and 5:30 p.m. Norris described the day as dry, clear, bright, and sunny.

2

Norris parked her car across the street from and "down a little ways" east of her friend's parents' home. Both women exited the car and started walking across the street, with Norris's friend walking a little in front of her. While walking, Norris was looking ahead at the houses she was approaching and not down at the road. No glare affected Norris, and she was able to see clearly from her car to her friend's parents' house. Norris did not walk around any obstacles in the road, and nothing obstructed her view of the road, the sidewalk, or the gutter in front of her. Norris tripped over "the lip" created by the height difference between the asphalt base layer and the gutter and fell.

Norris's friend walked along the same path on the pavement and made it onto the sidewalk without falling before Norris tripped. Norris's friend was looking ahead and did not see Norris fall. She did not see which part of the road Norris made contact with that "resulted in her trip-and-fall." Norris's friend understood that Norris tripped over the lip of the gutter based only on information provided to her by Norris.

C.    *Height Difference Between the Asphalt and the Gutter, and Other Conditions*

The parties presented conflicting evidence about the height difference between the asphalt and the gutter. Norris estimated that the height difference between the asphalt and the gutter was one inch. The person most qualified for Marathon testified that in general the height difference between the base pavement layer of asphalt and the gutter in Harvest Villages would have been somewhere between one and one-quarter inches to one and one-half inches. Lennar's off-site construction manager on the Harvest Villages project testified as Lennar's person most qualified. He testified that the vertical amount

3

of space between the base pavement asphalt layer and the gutter in general is "typically" between one and three-eighth inches and one and three-quarter inches.

Norris's expert opined that the displacement was between one inch and one and one-eighth inches within approximately one to two feet of where Norris's friend thought that Norris had fallen. That particular opinion was based on the friend's testimony and the expert's review of a photograph Norris's friend had taken of the "subject uplift" 17 days after the incident. The photograph upon which the expert relied is attached to the expert's declaration. It depicts a close-up of Norris's friend wearing a tennis shoe with her foot on the base pavement and pressed against the elevated gutter. The photograph was taken in front of Norris's friend's parents' house and, according to Norris's friend, was "not meant to depict the exact area where the accident occurred." Norris's friend confirmed that the photograph was meant to "[c]onvey what [she] believe[d] [was] probably the general proximity of where [Norris] fell." She also said that the photograph was taken within one to two feet of where Norris fell.

In forming the remainder of his opinions, the expert also relied on the deposition testimony of Norris, Norris's friend, another person who allegedly tripped near the same location, and Marathon's person most knowledgeable. The expert further opined: "The danger presented by the subject uplift is further exacerbated by the jagged and irregular characteristic of asphalt subgrade, along with the presence of loose debris and aggregate which could easily create an unstable walking surface."

4

D.    *Other Incidents*

Sometime in May 2017, someone else visiting Norris's friend's parents' home and walking to their house from the road "tripped over the—quote, unquote—lip" but did not fall.  The person could not recall whether it was daytime or nighttime when he tripped.  Norris's friend testified that she too tripped over "the lip" around the end of July 2017.  She did not provide any details about that incident.

E.    *The Litigation*

Norris filed a lawsuit against Lennar, the City of Jurupa Valley, and Marathon, alleging premises liability, negligence, and dangerous condition of public property.  Norris dismissed the action against the City of Jurupa Valley.

Defendants moved for summary judgment or summary adjudication in the alternative, arguing that the height differential between the asphalt and the gutter was trivial as a matter of law.[1]  Viewing the totality of the circumstances and assuming the vertical displacement to be one and three-quarter inches—the greatest differential supported by the conflicting evidence—the trial court agreed with defendants and concluded that the defect was trivial as a matter of law.  The trial court consequently granted summary judgment in favor of defendants.

STANDARD OF REVIEW

The trial court may grant summary judgment if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law.  (Code Civ.

---

[1]    Defendants also argued that the dangerous condition cause of action did not apply to them because they are not public entities.  Norris conceded the point in her opposition.

5

Proc., § 437c, subds. (c), (f)(2); *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) A moving defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).)

Once the moving defendant has carried its initial burden, the burden shifts to the plaintiff to show a triable issue of material fact with respect to the cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.) The court must consider all of the evidence and the reasonable inferences from it in the light most favorable to the nonmoving party. (*Aguilar*, at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

We review summary judgment orders de novo and apply the same legal standard as the trial court. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary judgment as a matter of law. (*Ibid.*) "'While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny.'" (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 732-733.)

6

DISCUSSION

Norris contends that the vertical displacement between the asphalt and the gutter where she tripped did not amount to a trivial defect as a matter of law, so the trial court erred by granting summary judgment in favor of defendants. We do not agree.

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) In general, "landowners are required 'to maintain land in their possession and control in a reasonably safe condition' [citations], and to use due care to eliminate dangerous conditions on their property." (*Taylor v. Trimble* (2017) 13 Cal.App.5th 934, 943-944.) But landowners "who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition." (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 398 (*Ursino*).)

Under the trivial defect doctrine, a "property owner is not liable for damages caused by a minor, trivial or insignificant defect in property." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927 (*Caloroso*); *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 26-27.) The trivial defect doctrine "is not an affirmative defense but rather an aspect of duty that [a] plaintiff must plead and prove." (*Caloroso*, *supra*, at p. 927.) Norris thus must prove as part of her negligence and premises liability causes of action that a jury could reasonably conclude that the alleged defect at issue is not trivial and thus is sufficiently dangerous to be actionable. (*Id.* at p. 929.)

7

"'Where reasonable minds can reach only one conclusion—that there was no substantial risk of injury—the issue is a question of law, properly resolved by way of summary judgment.'" (*Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1104-1105 (*Huckey*); *Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 569-570 (*Stathoulis*).) "If, however, the court determines that sufficient evidence has been presented so that reasonable minds may differ as to whether the defect presents a substantial risk of injury, the court may not conclude that the defect is trivial as a matter of law." (*Huckey*, *supra*, at p.1105.)

In determining whether a walkway displacement is trivial as a matter of law, we do not look at the size of the displacement alone. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105.) But size is "'one of the most relevant factors'" informing our decision. (*Ibid.*; *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734 (*Fielder*).) No court "has fixed an arbitrary measurement in inches below which a defect is trivial as a matter of law and above which it becomes a question of fact whether or not the defect is dangerous." (*Beck v. Palo Alto* (1957) 150 Cal.App.2d 39, 43 (*Beck*).)

We consider "all of the circumstances surrounding the accident that might make the defect more dangerous than its size alone would suggest." (*Caloroso*, *supra*, 122 Cal.App.4th at p. 927.) As relevant to the particular case, we thus consider circumstances including the size and the nature of the defect, "whether there were any broken pieces or jagged edges in the area of the defect, whether any dirt, debris or other material obscured a pedestrian's view of the defect, the plaintiff's knowledge of the area, whether the

8

accident occurred at night or in an unlighted area, the weather at the time of the accident, and whether the defect has caused any other accidents." (*Huckey*, *supra*, 37 Cal.App.5th at p. 1105.) We view any other accidents "in the light of all of the circumstances and other facts surrounding" those accidents, and we do not base our decision "solely on the occurrence of or the absence of other accidents." (*Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 268, fn. 7 (*Dolquist*).)

Norris argues that the size of the defect itself is too great to be considered trivial as a matter of law and that aggravating circumstances further preclude that determination. Neither of those arguments has merit. Considering all of the circumstances that existed when Norris tripped and fell, we conclude that the displacement between the asphalt and the gutter where Norris tripped was trivial as a matter of law.

Viewing the evidence in Norris's favor, we assume that the height differential between the asphalt and the gutter was one and three-quarter inches, because that was the greatest estimated difference supported by the evidence. This court recently concluded in *Huckey*, *supra*, 37 Cal.App.5th 1092, that a height differential of 1.21875 inches was trivial as a matter of law. (*Id.* at pp. 1108-1110.) Our holding in *Huckey* is consistent with other cases that have concluded that displacements up to one and seven-eighth inches are trivial as a matter of law absent other aggravating circumstances. (*Beck*, *supra*, 150 Cal.App.2d at p. 43 [one and seven-eighth inches]; *Dunn v. Wagner* (1937) 22 Cal.App.2d 51, 53-54 [one inch]; *Balmer v. City of Beverly Hills* (1937) 22 Cal.App.2d 529, 531-532 [one inch]; *Ness v. City of San Diego* (1956) 144 Cal.App.2d 668, 673

9

[seven-eighth inch]; *Cadam v. Somerset Gardens Townhouse HOA* (2011) 200 Cal.App.4th 383, 389 [three-quarter to seven-eighth inch]; *Whiting v. National City* (1937) 9 Cal.2d 163, 165-166 (*Whiting*) [three-quarter inch]; *Ursino*, *supra*, 192 Cal.App.3d at pp. 396–397, 399 [three-quarter inch]; *Fielder*, *supra*, 71 Cal.App.3d at pp. 725-726 [three-quarter inch]; *Caloroso*, *supra*, 122 Cal.App.4th at pp. 927-928 [less than one-half inch].)

While many of these cases involve displacements of one inch or less, the one and three-quarter inches height differential in the present case falls between the displacements of 1.21875 inches and one and seven-eighth inches that were determined to be trivial in *Beck*, *supra*, 150 Cal.App.2d at page 43 and *Huckey*, *supra*, 37 Cal.App.5th at pages 1108-1110. Norris contends that *Beck* is inapposite because, like here, there was conflicting evidence about the height of the displacement—between one inch and one and seven-eighth inches (*Beck*, at p. 42)—and *Beck* "failed to state just what particular measurement it was relying on to support its trivial defect conclusion." Reviewing the decision of the trial court after a bench trial, *Beck* explained that its review of the triviality issue was "without regard to the finding of the trial court." (*Beck*, at p. 42.) Viewing the totality of the circumstances, including "the difference in elevations of the sidewalk" and that it was daytime when the plaintiff tripped, the plaintiff was not distracted when she approached the displacement, and "[t]here was nothing to hide the defect or obstruct the view of one approaching it," *Beck* concluded that the displacement in the sidewalk was trivial as a matter of law. (*Id.* at pp. 43-44.) The Court of Appeal

10

was not in a position to weigh the evidence or the credibility of the witnesses who provided different measurements. (*Palmer v. City of Long Beach* (1948) 33 Cal.2d 134, 137-138.) Thus, in order to resolve whether no reasonable mind could conclude that the defect was not trivial, as the court had to do to determine the issue as a matter of law, *Beck* must have relied on the greatest height differential supported by the evidence—one and seven-eighth inches. *Beck* therefore supports the proposition that a greater displacement than the one at issue here has been found to be trivial as a matter of law.

We reject Norris's further attack on *Beck*, *supra*, 150 Cal.App.2d 39, for having been cited by too few published cases (three), none of which cited it concerning the amount of displacement. To the extent Norris's criticism is relevant, we note that no case has denounced *Beck* or questioned or criticized its reasoning or conclusion. (See *Adams v. San Jose* (1958) 164 Cal.App.2d 665, 669-670; *Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 287, 289; *Ellis v. Los Angeles* (1959) 167 Cal.App.2d 180, 188.)

*Beck supra*, 150 Cal.App.2d at pages 43-44 remains good law, and we no reason to depart from its reasoning and conclusion or from this court's recent conclusion in *Huckey*, *supra*, 37 Cal.App.5th at pages 1108-1109. The amount of displacement at issue falls squarely within the displacements at issue in those cases, and absent aggravating circumstances the displacement at issue here also was trivial as a matter of law.

Considering the circumstances when Norris tripped and fell, there is no additional evidence from which we can conclude that the displacement presented a substantial danger to a pedestrian exercising ordinary care. It was daylight, and Norris described the

11

conditions as dry, clear, bright, and sunny. Norris was able to see clearly from her car to her friend's parents' house, and there was no glare affecting her vision. She explained that nothing obstructed her view of the road, the sidewalk, or the gutter in front of her as she was walking. There were no obstacles along her path. The displacement between the asphalt and the gutter resulted from the final layer of pavement not having been poured yet on the entire street, so the height differential between the asphalt and the gutter existed along the entirety of the street. The differential therefore should have been obvious even to someone who was visiting the street for the first time. (*Huckey*, *supra*, 37 Cal.App.5th at p. 1109 [surrounding sidewalk was "in good condition" and "reasonably clean," it was light outside, and weather was dry]; *Whiting*, *supra*, 9 Cal.2d at p. 165 ["plainly visible" defect, and the plaintiff "tripped over it in the daytime while she was walking toward the exposed side of the rise, without anything to obstruct her vision of the sidewalk area"]; *Ursino*, *supra*, 192 Cal.App.3d at p. 396 [accident occurred during the daytime with fair and dry weather, and "there were no leaves, debris or other objects which blocked or concealed the defect in the sidewalk"].)

We are not persuaded otherwise by Norris's evidence of purported aggravating factors, including that she had not visited the street before, there were two other tripping incidents, and "the uneven nature of the base pave and the existence of loose debris." As we already explained, the nature of the displacement was such that it should have been obvious to a newcomer on a sunny and clear day without any obstructions because it existed along the entire street. The other tripping incidents are not helpful because no

12

details were provided about the circumstances surrounding the other tripping incidents, including where the people tripped relative to where Norris tripped, the time of day or night when the incidents occurred, and whether anything obscured or obstructed the pedestrians' view of the displacement. (*Dolquist*, *supra*, 196 Cal.App.3d at p. 268, fn. 7.) We cannot speculate about the other conditions that may have existed when those tripping incidents occurred, and we therefore cannot assume that they occurred without any other aggravating circumstances present. (*Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1453 ["A triable issue of fact can only be created by a conflict of evidence, not speculation or conjecture"].)

The only evidence about the existence of loose debris and aggregate and the "jagged" and irregular nature of the asphalt subgrade came from Norris's expert. He did not visit the site, and he formed his opinion on the basis of a single photograph and the deposition testimony of Norris, Norris's friend, another person who tripped, and Marathon's person most knowledgeable. But none of the deposition testimony Norris presented showed that any of those conditions existed at all, let alone when Norris fell. Nor did the photograph on which the expert relied. The photograph was taken 17 days after the incident, does not depict the location where Norris tripped, and is too close up to the foot to see much of the surrounding area. Viewing the evidence in Norris's favor, we assume that the photograph was taken within one or two feet of the location where Norris fell. But the photograph is a close-up of the foot and does not depict the curb one to two feet on either side of the foot. "An expert's opinion based on assumptions of fact without

13

evidentiary support has no evidentiary value." (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743.)

In sum, viewing the totality of the circumstances in the light most favorable to Norris, we agree with the trial court and conclude that reasonable minds could not differ and that the defect was trivial as a matter of law. The trial court therefore properly granted summary judgment in favor of defendants.

DISPOSITION

The judgment is affirmed. Defendants shall recover their costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ         <br>J.

We concur:

MILLER         
         Acting P. J.

RAPHAEL        
         J.